**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATE OF CALIFORNIA, THE STATE OF DELAWARE, THE STATE OF FLORIDA, THE STATE OF GEORGIA, THE STATE OF HAWAII, THE STATE OF ILLINOIS, THE STATE OF INDIANA, THE STATE OF LOUISIANA, THE STATE OF MICHIGAN, THE STATE OF MONTANA, THE STATE OF NEVADA, THE STATE OF NEW JERSEY, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, THE STATE OF OKLAHOMA, THE STATE OF RHODE ISLAND, THE STATE OF TENNESSEE, THE STATE OF TEXAS, THE STATE OF WISCONSIN, THE COMMONWEALTH OF MASSACHUSETTS, THE COMMONWEALTH OF VIRGINIA, THE DISTRICT OF COLUMBIA, THE CITY OF CHICAGO and THE CITY OF NEW YORK ex rel. PATRICK WALSH, <br><br> Plaintiffs, <br><br> v. <br><br> AMERISOURCE BERGEN CORPORATION, et al., <br><br> Defendants. | Civil Action No. 11-cv-7584 (RBS) |

**REDACTED DEFENDANTS' ANSWER TO FIRST AMENDED QUI TAM
COMPLAINT WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendants AmerisourceBergen Corporation ("ABC"), AmerisourceBergen Drug Corporation ("ABDC") and Bellco Drug Co. ("BD"), by and through their undersigned attorneys, hereby answer Plaintiff/Relator's First Amended Qui Tam Complaint ("Complaint") and assert affirmative defenses[1] and counterclaims.

## ANSWER

1.        Admitted in part; denied in part.  It is admitted that this Complaint purports to be an action filed under 31 U.S.C. §§ 3729-30 and various states' false claims acts.  ABC, ABDC and BD are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph purporting to describe the "purpose" of the Complaint and they are, therefore, denied.  The remaining allegations of this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

2.        Denied.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC or ABDC engaged in any unlawful activities.

3.        Admitted in part; denied in part.  It is admitted that Bellco Drug Co. ("BD") is a subsidiary of ABC.  Bellco Generics ("BG") is a business unit of BD.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that BD engaged in any unlawful activities.

---

[1]     Some of the headings and footnotes in the Complaint improperly contain allegations and argument, and are thus improper under Fed. R. Civ. P. 8.  Therefore, ABC, ABDC and BD do not include such headings or footnotes in their answer.  Any allegations in the headings or footnotes are denied.

4.      Admitted in part; denied in part.  It is admitted that BG's operations are headquartered at 5500 New Horizons Blvd., Amityville, NY 11701-1156, that its account managers are based out of Sunrise, Florida, and that it services multiple customers.  The remaining allegations in this paragraph are denied.

5.      Admitted in part; denied in part.  It is admitted that BG account managers sell generic products nationwide, which sometimes involves "cold calling," and that BG utilizes techniques such as telephone sales and web-ordering.  It is further admitted that BG provides overnight shipping from BD's warehouse located in Amityville, New York to anywhere in the United States.  The remaining allegations are denied.

6.      Denied.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that BD engaged in any unlawful activities.

7.      Admitted in part; denied in part.  It is admitted that Plaintiff/Relator is an employee of ABC.  The remaining allegations of this paragraph are denied.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.

8.      Admitted in part; denied in part.  It is admitted, upon information and belief, that Plaintiff/Relator is a CPA with a principal residence of 801 Berberry Drive, Lansdale, PA, 19446.  ABC, ABDC and BD are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph purporting to describe Plaintiff/Relator's qualifications and work history, and they are, therefore, denied.

9.      Admitted in part; denied in part.  It is admitted that Plaintiff/Relator began employment with ABC in 2007 with the title Auditor III.  It is further admitted that Plaintiff/Relator's duties included, among other responsibilities: conducting risk assessments; financial, operational and compliance audits, and performing tests of controls in an integrated SAP environment; confirming findings with management and draft audit reports.  It is further admitted that Plaintiff/Relator's audit areas included, among others: customer agreements rebate compliance; drug manufacturer incentives programs; contract packaging; and supply chain. ABC, ABDC and BD are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph purporting to describe Plaintiff/Relator's qualifications and work history, and they are, therefore, denied.

10.     Admitted in part; denied in part.  It is admitted that ABC is a Delaware corporation whose headquarters is located at 1300 Morris Drive, Chesterbrook, PA, that it is one of the world's largest pharmaceutical services companies, and that it services both pharmaceutical manufacturers and healthcare providers and provides drug distribution and related services.  ABC's corporate subsidiaries include ABDC, AmerisourceBergen Specialty Group ("ABSG"), and AmerisourceBergen Consulting Services ("ABCS").  It is admitted that BD is a subsidiary of Liberty Acquisition Corp and that Liberty Acquisition Corp. is a subsidiary of ABC.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  To the extent that the use of the collective designation "Defendants" suggests that any corporate defendant is liable for the acts of another, that is a conclusion of law to which no response is required and is, therefore, denied.  It is further specifically denied that any entities

other than ABC, ABDC and BD are defendants in this matter.  The remaining allegations are denied.

      11.     Admitted.

      12.     Admitted in part; denied in part.  It is admitted that ABDC also provides pharmacy management, staffing and other consulting services; scalable automated pharmacy dispensing equipment; medication and supply dispensing cabinets; and supply management software to a variety of retail and institutional healthcare providers.  The remaining allegations are denied.

      13.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

      14.     Admitted.

      15.     Admitted.

      16.     Admitted in part; denied in part.  It is denied that ABPG exists.  The remaining allegations are admitted.

      17.     Admitted in part; denied in part.  It is admitted only that BG services multiple customers.  The remaining allegations in this paragraph are denied.

      18.     Admitted in part; denied in part.  It is admitted that BG's operations are headquartered at 5500 New Horizons Blvd., Amityville, NY 11701-1156 and that its account managers are based in Sunrise, Florida.  The remaining allegations in this paragraph are denied.

      19.     Admitted in part; denied in part.  ABC, ABDC and BD admit that Plaintiff/Relator purports to bring this action in his capacity as Relator and on behalf of the United States but that after investigating Plaintiff/Relator's allegations, the United States

declined to intervene in this matter.  It is specifically denied that ABC, ABDC or BD engaged in any unlawful or fraudulent activities.  The remaining allegations in this paragraph are denied.

20.     Admitted in part; denied in part.  ABC, ABDC and BD admit that Plaintiff/Relator purports to bring this action in his capacity as Relator on behalf of the listed states and commonwealths ("States"), cities, and the District of Columbia.  It is specifically denied that ABC, ABDC or BD engaged in any unlawful or fraudulent activities.  The remaining allegations in this paragraph are denied.

21.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

22.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

23.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

24.     Admitted in part; denied in part.  It is admitted only that the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq*., (hereinafter "Medicare"), is a health insurance program.  The remaining allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

25.     Admitted in part; denied in part.  It is admitted only that the Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v (hereinafter "Medicaid"), is a health insurance program.  The remaining allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

26.     Admitted in part; denied in part.  It is admitted only that Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") (now known as "TRICARE"), 10

U.S.C. §§ 1071-1106 is a health benefits program.  The remaining allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

27.     Admitted in part; denied in part.  It is admitted that the Department of Defense, Veterans Affairs, and Bureau of Prisons operate medical facilities and purchase prescription drugs with federal funds.  The remaining allegations are denied.  To the extent the remaining allegations in this paragraph constitute conclusions of law, no response is required and they are, therefore, denied.

28.     Admitted in part; denied in part.  It is admitted only that the Federal Employees Health Benefits Program ("FEHBP") is a health benefits program.  The remaining allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

29.     Denied.  To the extent that this paragraph purports to be based on a statute, the statute, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

30.     Denied.  To the extent that this paragraph purports to be based on a statute, the statute, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

31.     Denied.  To the extent that this paragraph purports to be based on a statute, the statute, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

32.     Denied.  To the extent that this paragraph purports to be based on a statute, the statute, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

33.     Denied.  To the extent that this paragraph purports to be based on a statute, the statute, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

34.     Denied.  To the extent that this paragraph purports to be based on laws, statutes, codes or regulations, the laws, statutes, codes or regulations, being in writing, speak for themselves and Plaintiff/Relator's characterization of them is denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

35.     Denied.  To the extent that this paragraph purports to be based on laws, statutes, codes or regulations, the laws, statutes, codes or regulations, being in writing, speak for themselves and Plaintiff/Relator's characterization of them is denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

36.     Denied.  To the extent that this paragraph purports to be based on case law, the case law, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

37.     Denied.  To the extent that this paragraph purports to be based on case law, the case law, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.

38.     Denied.  To the extent that this paragraph purports to be based on a statute, the statute, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.

39.     Denied.  To the extent that this paragraph purports to be based on case law and legislative history, the case law and legislative history, being in writing, speak for themselves and Plaintiff/Relator's characterization of them is denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.

40.     Denied.  To the extent that this paragraph purports to be based on case law and a statute, the case law and statute, being in writing, speak for themselves and Plaintiff/Relator's characterization of them is denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.

41.     Denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

42.     Denied.  To the extent that this paragraph purports to be based on case law, the case law, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

43.     Denied.  To the extent that this paragraph purports to be based on case law, a statute and regulations, the case law, statute and regulations, being in writing, speak for themselves and Plaintiff/Relator's characterization of them is denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied. Further, it is specifically denied that ABC or ABDC engaged in any unlawful activities.

44.     Denied.  To the extent that this paragraph purports to be based on regulations, the regulations, being in writing, speak for themselves and Plaintiff/Relator's characterization of them is denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.

45.     Denied.  To the extent that this paragraph purports to be based on case law, the case law, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied. The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.

46.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph

are deemed to be factual, they are denied.  Further, it is specifically denied that ABC or ABDC engaged in any unlawful activities.

47.    Admitted in part; denied in part.  It is admitted that ABDC distributes a comprehensive offering of brand-name and generic pharmaceuticals, over-the-counter healthcare and other products, home healthcare supplies and equipment, and related services to a wide variety of healthcare providers, including acute care hospitals and health systems, independent and chain retail pharmacies, mail order pharmacies, medical clinics, long-term care and other alternate site pharmacies, and other customers.  The remaining allegations are denied.

48.    Admitted.

49.    Admitted in part; denied in part.  It is admitted that ABDC is the primary source of drug supply for various independent pharmacies, and that ABDC enters into, renews and maintains Prime Vendor Agreements ("PVAs") with some of those independent pharmacies.  It is further admitted that ABDC offers to its customers the Good Neighbor Pharmacy program, Good Neighbor Pharmacy Provider Network, PRxO Generics program and hospital pharmacy consulting.  The remaining allegations are denied.

50.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

51.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

52.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

53.    Admitted in part; denied in part.  It is admitted only that ABDC independent pharmacy customers, including those who enter into a PVA, may elect to participate further with ABDC in one of its programs such as Good Neighbor Pharmacy® program or the Good Neighbor Pharmacy Provider Network®.  The remaining allegations are denied.

54.    Admitted.

55.    Admitted.

56.    Admitted.

57.    Admitted in part; denied in part.  It is admitted upon information and belief only that Kirby Lester, LLC, ("Kirby Lester") is a limited liability company that is headquartered at 13700 Irma Lee Court, Lake Forest, IL 60045.  ABC, ABDC and BD are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph purporting to describe Kirby Lester's business and products and they are, therefore, denied.

58.    Admitted in part; denied in part.  It is admitted that a purpose of certain Kirby Lester machines is to count pills.  Otherwise, ABC, ABDC and BD are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, which purport to describe Kirby Lester's products and they are, therefore, denied.

59.    Denied.  By way of further answer, to the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  To the extent that this paragraph purports to

state what the pharmacy industry recognizes and what an unidentified wealth of research states, ABDC, ABDC, and BD are without any knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and they are, therefore, denied.

60.     Denied.  ABC, ABDC and BD are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and they are, therefore, denied.

61.     Denied.  By way of further answer, to the extent that the allegations in this paragraph constitute conclusions of law, no response is required and they are, therefore, denied. Further, it is specifically denied that ABC or ABDC engaged in any unlawful activities.

62.     Denied.

63.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

64.     Admitted in part; denied in part.  It is admitted that Lori Ayasse works for Automed in Buffalo Grove, Illinois.  Otherwise, the remaining allegations of this paragraph are denied.

65.     Admitted in part; denied in part.  It is admitted only that Kirby Lester units were shipped to certain customers.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

66.     Admitted in part; denied in part.  It is admitted that Ayasse recorded the shipments of the Kirby Lester units to customers.  It is further admitted that Dan Hawkins, an IT Director at Automed, assisted Ayasse with uploading some of the customers' information.  To the extent that this paragraph purports to be based on documentation, that documentation, being

13

in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

67.     Admitted in part; denied in part.  It is admitted that Ayasse recorded the shipments of the Kirby Lester units to customers.  For a period of time, Ayasse mailed ABDC's invoices to Jill Cowles, an accounts payable manager, at the Central Financial Center in Eden Prairie, MN.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

68.     Denied.

69.     Denied.

70.     Admitted in part; denied in part.

                              To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied. Further, it is specifically denied that ABC or ABDC engaged in any unlawful activities.

71.     Denied.

72.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.  Further, it is specifically denied that ABC or ABDC engaged in any unlawful activities.

73.     Denied.  By way of further answer, to the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

74.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

75.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

75.     [sic][2] Denied.  ABC and ABDC are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph purporting to describe the name of the file received by Plaintiff/Relator and they are, therefore, denied.  The remaining allegations are denied.

76.     Denied.  It is specifically denied that ABC or ABDC engaged in any unlawful activities.

77.     Denied.  It is specifically denied that ABC or ABDC engaged in any unlawful activities.

78.     Admitted in part; denied in part.

The remaining allegations are denied.

79.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

---

[2] The Complaint contains two paragraphs 75.

80.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

81.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

82.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.  Further, it is specifically denied that ABC or ABDC engaged in any unlawful activities.

83.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

84.     Admitted in part; denied in part.

To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

85.     Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

86.     Denied.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

87.     Denied.  By way of further answer, to the extent the allegations in this paragraph constitute conclusions of law to which no response is required and they are denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC or ABDC engaged in any unlawful activities.

88.     Admitted in part; denied in part.  It is admitted only that BD is a subsidiary of ABC, and BG is a business unit of BD.  The remaining allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC or BD engaged in any unlawful activities.

89.     Admitted in part; denied in part.  It is admitted that BG's operations are headquartered at 5500 New Horizons Blvd., Amityville, NY 11701-1156, that its account managers are based out of Sunrise, Florida and that it services multiple customers.  The remaining allegations in this paragraph are denied.

90.     Admitted in part; denied in part.  It is admitted that BG account managers sell generic products nationwide, which sometimes involves "cold calling," and that BG utilizes techniques such as telephone sales and web-ordering.  It is further admitted that BG provides

overnight shipping from BD's warehouse located in Amityville, New York to anywhere in the United States.  The remaining allegations are denied.

91.     Denied.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that BD engaged in any unlawful activities.

92.     Admitted in part; denied in part.  It is admitted that BG promotes specific prescription products on a monthly basis, and account managers are informed of such promotions.  It is further admitted that, at times, BG offers promotions on certain products.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

93.     Denied.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that BD engaged in any unlawful activities.

94.     Admitted in part; denied in part.  It is admitted only that BG has a wide range of customers, and that the frequency of purchasing varies greatly among those customers.  The remaining allegations are denied.

95.     Admitted in part; denied in part.  It is admitted that some customers only place orders in one or two months of the year.  The remaining allegations are denied.

96.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent that this paragraph purports to

18

be based on documentation and case law, that documentation and case law, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.

97.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent that this paragraph purports to be based on a regulation, the regulation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that BD engaged in any unlawful activities.

98.     Admitted in part; denied in part.  It is admitted that BG account managers receive a salary and a structured commission.  It is further admitted that BG holds daily sales meetings in Sunrise, Florida, which may include, among other topics, discussions of monthly promotions.  Account managers are informed of monthly promotions by an e-mail from a senior account manager.  The remaining allegations are denied.

99.     Admitted in part; denied in part.  It is admitted that the prescription products on the Short Dated/Close Out List are products that BG purchases from drug manufacturers at a price that is below BG's normal acquisition costs because the products are short dated, overstocked or being closed out.  The remaining allegations are denied.

100.     Admitted in part; denied in part.  It is admitted that monthly Promotions Lists are communicated to account managers by the senior account manager.  The Promotions Lists are stored and accessible on a shared network drive.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

101.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

102.    Admitted in part; denied in part.  It is admitted only that the customers' orders are invoiced and that BG ships the orders via UPS or a local delivery service from Amityville, NY. The remaining allegations are denied.

103.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

104.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

105.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

106.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

107.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

108.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

109.    Denied.  To the extent that this paragraph purports to be based on documentation, that documentation, being in writing, speaks for itself and Plaintiff/Relator's characterization of it is denied.  The remaining allegations are denied.

110.    Denied.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

111.    ABC, ABDC and BD incorporate by reference herein their responses to paragraphs 1 through 64 as though fully set forth herein.

112.    Denied.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

113.    Denied.  By way of further answer, the allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

114.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

115.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

116.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

117.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied. Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

118.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

119.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

120.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

121.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph

are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

122.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

123.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

124.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

125.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied. Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

126.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

127.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

128.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

129.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

130.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

131.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

132.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph

are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

133.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

134.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

135.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

136.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

137.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

138.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

139.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

140.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

141.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  To the extent the allegations of this paragraph are deemed to be factual, they are denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities.

142.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

143.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

144.     Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

145.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.

146.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and are, therefore, denied.  Further, it is specifically denied that ABC, ABDC or BD engaged in any unlawful activities, or that Plaintiff/Relator, the United States, the relevant States or cities, or the District of Columbia are entitled to any recovery in this matter.

## GENERAL PRAYER FOR RELIEF

**WHEREFORE**, ABC, ABDC and BD respectfully request that judgment be entered in their favor and against Plaintiff/Relator and further request that they be awarded costs and attorneys' fees and such other and further relief that the Court deems appropriate and just.

## GENERAL DENIAL

ABC, ABDC and BD deny each and every allegation of the Complaint that has not been admitted or specifically responded to.  To the extent that any allegation of facts in the Complaint remains unanswered, ABC, ABDC and BD deny such allegations.  Furthermore, ABC, ABDC and BD deny each and every request for relief.

**WHEREFORE**, ABC, ABDC, and BD request that the Complaint be dismissed with prejudice and that all costs, attorneys' fees, and all other appropriate relief be assessed against Plaintiff/Relator and in favor of ABC, ABDC and BD.

## AFFIRMATIVE DEFENSES

1.    Without assuming the burden of proof for any claim or element of any claim that properly lies with the Plaintiff/Relator, ABC, ABDC and BD assert the following affirmative defenses to Plaintiff/Relator's Complaint.

## FIRST AFFIRMATIVE DEFENSE
### (Compliance with Anti-Kickback Safe Harbors)

2.      At all relevant times, ABC, ABDC and BD complied fully with all relevant "safe harbor" provisions under the Anti-Kickback Statute, 42 U.S.C.§ 1320a-7b(b), and regulations promulgated under the Anti-Kickback Statute, 42 C.F.R. § 1001.952.

3.      ABDC and BD satisfied the requirements of the discount safe harbor by (1) fully and accurately reporting the discounts on the invoice, coupon or statement submitted to their customers; (2) informing their customers in a manner reasonably calculated to give notice to the customers of their obligations to report the discount and to provide information upon request under 42 C.F.R. § 1001.952(h)(1); and (3) refraining from doing anything that would impede the customers from meeting their obligations under the discount safe harbor regulations.  *See* 42 CFR § 1001.952(h)(2)(iii)(B).

### Kirby Lester Allegations

4.      With respect to the Kirby Lester transactions, ABDC offered customers a discount in the form of a "rebate," the terms of which were fixed and disclosed in writing to the customer at the time of the initial purchase to which the discount applied, but which was not given at the time of sale.  *See* 42 C.F.R. § 1001.952(h)(4).

5.      Prior to receiving a Kirby Lester machine, all customers had to sign a document reflecting the terms on which ABDC was offering the machine.

6.

7.

8.

9.

10.

**Bellco Generics Allegations**

11.     BG complied with the discount safe harbor with regard to practices alleged in the Complaint.  BG's alleged price reduction on one item for the purchase of another item qualifies as a "discount" because both items are reimbursed by the same federal health program using the same methodology.  *See* 42 C.F.R. § 1001.952(h)(5)(2).

12.     Prescription items on both the Short Dated/Close Out Lists and the Promotions Lists are all reimbursed by and under the reimbursement methodology of Medicare Part D.  *See* Section 1860D-2(e)(1) of the Social Security Act (42 U.S.C. §1395w-102(e)(1)).  Thus, this price reduction qualifies as a "discount" under the safe harbor regulations.  *See* 42 C.F.R. § 1001.952(h)(5)(2).

13.     Customers who received a discount for purchases from the Short Dated/Close Out List items received a credit memo reflecting the discount.  *See, e.g.*, Plaintiff's Ex. O, Doc. 6-3 at 63.

14.     In addition, BG sent its customers invoices for all purchases from the Short Dated/Close Out Lists.  *See, e.g.*, Plaintiff's Exhibit O, Doc. 6-3 at 80.

15.     BG fully and accurately reported the discounts of the drugs on the Short

Dated/Close Out Lists on both the credit memo and the invoice associated with that purchase.

*See, e.g.*,  Ex. O, Doc. 6-3 at 63, 80.

16.

17.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

18.     The Complaint fails to state a claim against ABC, ABDC or BD for which relief

can be granted.

31

## THIRD AFFIRMATIVE DEFENSE
### (Lack of Specificity)

19.     The Complaint fails to comply with Fed. R. Civ. P. 9(b) in that the allegations are not stated with particularity.

## FOURTH AFFIRMATIVE DEFENSE
### (Lack of Knowledge Under the False Claims Act)

20.     ABC, ABDC and BD did not act knowingly within the meaning of the False Claims Act.

21.     ABC, ABDC and BD did not have actual knowledge of any alleged falsity; act in deliberate ignorance of the truth or falsity of relevant information; or recklessly disregard the truth or falsity of relevant information.

22.     ABC, ABDC and BD did not know that their conduct violated any law or regulation, including the Anti-Kickback Statute (which it did not); or act in deliberate ignorance or reckless disregard of the requirements of any law or regulation, including the Anti-Kickback Statute.

## FIFTH AFFIRMATIVE DEFENSE
### (Lack of Due Process)

23.     Plaintiff/Relator's claims, if permitted to proceed, would deprive ABC, ABDC and BD of their rights to substantive and procedural due process of law under the United States Constitution and the constitutions of the States because the Complaint fails to state and identify with sufficient particularity the circumstances and communications allegedly constituting fraud and misrepresentation.

## SIXTH AFFIRMATIVE DEFENSE
### (Good Faith)

24.     ABC, ABDC and BD reasonably believed, and continue to believe, that any and all transactions referred to in the Complaint complied with all applicable laws and regulations.

25.     To the extent that any of the actions alleged by Plaintiff/Relator to have been taken by ABC, ABDC and BD occurred, said actions were taken in good faith and not with any improper or illegal purpose, intent or knowledge.

## SEVENTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

26.     The United States Government and the relevant States, cities, and District of Columbia have declined to intervene in this action.

27.     Plaintiff/Relator has not suffered any damages, harm or injury as a result of the alleged actions of ABC, ABDC and BD.

28.     The United States Government, and the relevant States, cities, and District of Columbia, have not suffered any damages, harm or injury as a result of the alleged actions of ABC, ABDC and BD.

29.     Insofar as neither Plaintiff/Relator nor the Government or the relevant States, cities, or District of Columbia have suffered harm as a result of ABC, ABDC and BD's alleged actions, and the Government and the relevant States, cities, and the District of Columbia have declined to intervene, Plaintiff/Relator lacks standing to bring this action.

## EIGHTH AFFIRMATIVE DEFENSE
### (Compliance with Law)

30.     Plaintiff/Relator's claims are barred, in whole or in part, because ABC, ABDC and BD's conduct was in compliance with, or authorized by, laws and regulations administered by any regulatory body or officer action under municipal, state, or federal statutory authority.

33

## NINTH AFFIRMATIVE DEFENSE
### (Estoppel)

31.     Plaintiff/Relator's claims are barred, in whole or in part, by estoppel.

## TENTH AFFIRMATIVE DEFENSE
### (Waiver)

32.     Plaintiff/Relator's claims are barred, in whole or in part, by waiver.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Laches)

33.     Plaintiff/Relator's claims are barred, in whole or in part, by laches.

## TWELFTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

34.     Plaintiff/Relator's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

35.     Plaintiff/Relator's claims are barred, in whole or in part, on the basis that Plaintiff/Relator and the government would be unjustly enriched if allowed to recover on any or any part of the damages alleged in the Complaint.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

36.     The claims asserted in the Complaint are barred, in whole or in part, due to failure to mitigate alleged damages.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Unconstitutionality of the False Claims Act)

37.    The False Claims Act, 31 U.S.C. § 3729, *et seq.*, including without limitation the qui tam provisions of the act as well as the treble damages and penalty provisions of the act, is unconstitutional.

38.    The States' false claims acts, including without limitation the qui tam provisions of the acts as well as the treble damages and penalty provisions of the acts, are unconstitutional under the States' constitutions,

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Violation of the Excessive Fines Clause)

39.    Penalties and treble damages authorized under the False Claims Act and the false claims acts of the States, cities, and the District of Columbia so exceed any actual loss incurred by the United States, States, cities, or District Columbia as a result of any claims paid that the acts as promulgated violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and similar clauses of the constitutions of the States, and are therefore void.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Ratification)

40.    The government has ratified the alleged conduct of ABC, ABDC and BD complained of in the Complaint by failing to take any action despite its knowledge of the conduct.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

41.    Plaintiff/Relator's claims are barred, in whole or in part, by the applicable statute of limitations.

### NINETEENTH AFFIRMATIVE DEFENSE
### (Government Knowledge)

42.     Plaintiff/Relator's claims are barred, in whole or in part, because the government had actual or constructive knowledge of the relevant facts and, therefore, Plaintiff/Relator's claims are not false or knowingly false, and, alternatively, the government was not defrauded.

### TWENTIETH AFFIRMATIVE DEFENSE
### (Vexatious and Harassing Claims)

43.     Plaintiff/Relator's claims are barred, in whole or in part, because they are vexatious, frivolous, and intended only to annoy, embarrass and harass ABC, ABDC and BD.

### TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Damages)

44.     Any award of statutory or punitive damages or statutory penalties in this action would violate the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  An award of statutory or punitive damages would violate ABC, ABDC and BD's rights to due process.  Plaintiff/Relator's claims are thus constitutionally barred. Plaintiff/Relator's request for damages violates the Excessive Fines clause of the Eighth Amendment to the United States Constitution because damages sought constitute excessive and arbitrary punishment that furthers no legitimate purpose, and thus, is an arbitrary deprivation of property.  Plaintiff/Relator's request for penalties violates the Excessive Fines clause of the Eighth Amendment to the United States Constitution inasmuch as the requested penalties are purely punitive, do not bear any relation to either actual damages or government enforcement costs, and are excessive.  For the same reasons, any award of statutory or punitive damages or statutory penalties in this action would violation the constitutions of the States.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Damages)

45.     Plaintiff/Relator's claims are barred, in whole or in part, because his alleged damages, if any, are speculative, and because of the impossibility of proof of any alleged damages.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Punitive Damage)

46.     With respect to any demand for punitive damages, ABC, ABDC, and BD specifically incorporate by reference all standards of limitation regarding the determination and enforceability of punitive damages, including but not limited to those limitations set forth in *BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996); *Cooper Industries v. Leatherman Tool Group, Inc.,* 532 U.S. 424 (2001); and *State Farm Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003)..

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Lack of Subject Matter Jurisdiction)

47.     The Court lacks jurisdiction over some or all of the allegations made by Plaintiff/Relator under the False Claims Act pursuant to 31 U.S.C. § 3730(e)(4) because (1) the claims, allegations and transactions described in the Complaint were "publicly disclosed" prior to the filing and/or unsealing of the lawsuit and (2) Plaintiff/Relator is not an "original source" of the information as defined by 31 U.S.C. §§ 3730(e)(4)(A), (B).

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Lack of Causation)

48.     Any inaccurate or incorrect claims or certifications were not made by ABC, ABDC and BD, and ABC, ABDC and BD did not cause the claims to be filed.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Compliance Not a Condition of Payment or Participation)

49.     Compliance with the Anti-Kickback Statute or similar state or municipal laws referred to in Plaintiff/Relator's Complaint is not a condition of payment by Medicare, Medicaid or the other health care programs referenced in the Complaint.  Therefore, even if alleged certifications of compliance were incorrect or false, that fact would not give rise to an action under the False Claims Act.

50.     Compliance with the Anti-Kickback Statute or similar state or municipal laws referred to in Plaintiff/Relator's Complaint does not create a condition of payment under any Federal or state law, or any government healthcare program.  Therefore, even if alleged certifications of compliance were incorrect or false, that fact would not give rise to an action under the False Claims Act.

51.     Compliance with the Anti-Kickback Statute or similar state or municipal laws referred to in Plaintiff/Relator's Complaint is not a condition of participation in Medicare, Medicaid or the other programs referenced in Plaintiff/Relator's Complaint.  Therefore, even if alleged certifications of compliance were incorrect or false, that fact would not give rise to an action under the False Claims Act.

52.     Compliance with the Anti-Kickback Statute or similar state or municipal laws referred to in Plaintiff/Relator's Complaint does not create a condition of participation under any Federal or state law, or any government healthcare program.  Therefore, even if alleged certifications of compliance were incorrect or false, that fact would not give rise to an action under the False Claims Act.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (Lack of Wrongful Conduct)

53.     ABC, ABDC and BD did not present or cause to be presented any false claim, record or statement to any municipality, state or the United States.

54.     ABC, ABDC and BD did not violate any provision of municipal, state or federal law.

55.     ABC, ABDC and BD did not breach any duty under the laws, rules or regulations of any municipality, state or the United States.

56.     ABC, ABDC and BD did not engage in any wrongful conduct, any knowing misrepresentation or any fraud with respect to any state, municipality or the United States.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### (Non-Materiality)

57.     The alleged conduct of ABC, ABDC and BD complained of in the Complaint was not material to the payment of any alleged false or fraudulent claims, and hence neither the government nor Plaintiff/Relator can recover on the claims alleged in the Complaint, because Plaintiff/Relator fails to allege materiality sufficient to satisfy the False Claims Act.

### TWENTY-NINTH AFFIRMATIVE DEFENSE
### (Other Constitutional Violations)

58.     Plaintiff/Relator's actions violate the Commerce Clause, and the Privileges and Immunities clause of the Constitution of the United States.

### THIRTIETH AFFIRMATIVE DEFENSE
### (Intermediary and Sophisticated User Doctrine)

59.     Plaintiff/Relator's claims are barred, in whole or in part, by the learned intermediary and sophisticated user doctrines, and similar legal doctrines.

## THIRTY-FIRST AFFIRMATIVE DEFENSE
### (Failure to Rely)

60.     The government did not rely on the alleged conduct by ABC, ABDC and BD complained of in the Complaint, and hence neither the government nor Plaintiff/Relator can recover on the claims alleged in the Complaint.

## THIRTY-SECOND AFFIRMATIVE DEFENSE
### (Lack of Proximate Cause)

61.     Plaintiff/Relator's claims are barred, in whole or in part, because ABC, ABDC and BD's conduct did not cause, proximately cause, or solely proximately cause any false claim or certification, or the alleged loss and/or damages.

## THIRTY-THIRD AFFIRMATIVE DEFENSE
### (Lack of Conspiracy)

62.     At all relevant times, ABC, ABDC and BD maintained normal, reasonable and appropriate business relationships, and had no agreement to achieve any unlawful object, including, but not limited to, defrauding the government by getting false claims paid or inducing false certifications.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE
### (Affiliated Companies Cannot Conspire)

63.     ABDC and BD are wholly-owned subsidiaries of ABC and, therefore, they cannot conspire with ABC or with each other.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE
### (Mistake of Law)

64.     ABC, ABDC and BD reasonably believed that their conduct complied with all applicable federal, state, and municipal laws and regulations.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE
### (Preemption)

65.     The City of New York's FCA is preempted, in whole or in part, by the State of New York's FCA.

66.     The City of Chicago's FCA is preempted, in whole or in part, by the State of Illinois's FCA.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Serve or Disclose)

67.     Plaintiff/Relator's state, city and District of Columbia FCA claims are barred because Plaintiff/Relator failed to properly serve the complaint and/or make disclosures upon the states, cities and District of Columbia pursuant to the applicable procedural requirements of the state, city or District of Columbia FCA statutes.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE
### (Intervening Cause)

68.     Plaintiff/Relator's claims are barred, in whole or in part, because any false claims or certification, or the alleged loss and/or damages, resulted from an intervening or superseding cause.

## THIRTY-NINTH AFFIRMATIVE DEFENSE
### (Improper Use of Confidential/Privileged Information)

69.     Plaintiff/Relator's claims are barred, in whole or in part, because they rely on confidential, proprietary and/or privileged information that he has no right to use or disclose, and he cannot establish such claims without improperly relying upon and/or disclosing defendants' confidential, proprietary and/or privileged information.

### FORTIETH AFFIRMATIVE DEFENSE
### (Additional Defenses)

70.     ABC, ABDC and BD give notice that they intend to rely upon any other additional defense that is now or may become available or revealed during, or as a result of further investigation or discovery in this action.  ABC, ABDC and BD hereby reserve their rights to amend its answer to assert such defense(s).

### COUNTERCLAIMS

Counterclaimants ABC, ABDC and BD (collectively "Counterclaimants"), by and through their undersigned attorneys, hereby assert counterclaims against Plaintiff/Relator Patrick Walsh ("Plaintiff/Relator") and state as follows:

### JURISDICTION

1.     Plaintiff/Relator has submitted to the personal jurisdiction of this Court by asserting claims against Counterclaimants.

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1367 because the claims asserted herein are so related to the federal claims asserted by Plaintiff/Relator against Counterclaimants that they form part of the same case or controversy under Article III of the United States Constitution.

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

3.     ABC is a pharmaceutical services company that serves pharmaceutical manufacturers and healthcare providers, and provides drug distribution and related services.  ABDC and BD are wholly owned subsidiaries of ABC.  ABDC distributes prescription pharmaceuticals as well as a variety of other products to pharmacies and other businesses.  BD also distributes pharmaceutical and other products to customers.

4.      Plaintiff/Relator is a Certified Public Accountant (CPA), and works for ABC as an Internal Auditor III.  In this position, Plaintiff/Relator has had access to confidential, proprietary and privileged information belonging to the Counterclaimants.

5.      The pharmacy sales industry in which Counterclaimants conduct their business is highly competitive.  Consequently, it is important for Counterclaimants to protect their confidential and proprietary information in that it could be used by competitors to gain an improper advantage over Counterclaimants or otherwise harm Counterclaimants' business.

6.      Among Counterclaimants' confidential documents are its customer contracts (typically called PVA's and Group Purchasing Organization Agreements) that include pricing and payment terms.

7.      Other confidential, proprietary and/or privileged information Counterclaimants seek to protect includes, but is not limited to, documents containing or comprising pricing, credit transactions and sales analysis information, customer lists with customer information, financial information, audit reports, information subject to the attorney-client privilege and attorney work product protection, self-critical evaluations and assessments, and documents containing Counterclaimants' operating policies and procedures.

8.      Additionally, in the course of performing their audit functions, Counterclaimants' internal auditors are from time to time privy to information subject to the companies' attorney-client privilege or attorney work product protection through, for example, gathering factual information or conducting analyses in the course of counsel-directed reviews, or being privy to legal advice provided by company counsel with regard to matters subject to audit.

9.      Counterclaimants do not share these or similar documents with third parties unless required by Court order or subpoena, and even in those circumstances pricing and other

confidential information is restricted and subject to confidentiality protection to the full extent permitted by law.

10.     Counterclaimants rely on their internal auditors to assist them in engaging in important self-critical analysis by, among other things, assisting in identifying errors, practices or procedures that may require correction or improvement, disclosing to the Counterclaimants fully and accurately any concerns they identify during the course of their audits, and cooperating with the Counterclaimants in the implementation of any appropriate remedial measures; and to do so in a manner that accords with their auditors' obligations of confidentiality as auditing and accounting professionals, and company employees.

11.     The Counterclaimants further rely on their internal auditors to conduct their audit work in a manner that maintains and does not jeopardize the confidentiality of the company information and materials reviewed during those audits.

12.     The Counterclaimants further rely on their internal auditors to use information obtained by them during the course of their audits only in the interests of the Counterclaimants, and not for the auditors' personal gain or advantage.

13.     ABC has taken reasonable steps to protect its confidential, proprietary, sensitive, privileged and/or commercially valuable information.  These efforts include, without limitation:

    a)    Entering into a written Confidentiality Agreement with employees such as Plaintiff/Relator, who have access to confidential and proprietary information of ABC and/or its subsidiaries;

    b)    Requiring all employees, including Plaintiff/Relator, to execute an acknowledgement form that they have received and reviewed Counterclaimants' Code of Ethics & Business Conduct containing a confidentiality provision;

    c)    Providing all employees, including Plaintiff/Relator, with an Associate Handbook ("Handbook") that includes a specific provision requiring employees to maintain confidentiality during or after an internal or external investigation;

d)      Requiring all employees, including Plaintiff/Relator, to execute an acknowledgement form that they have reviewed Counterclaimants' policies and procedures in the Handbook;

e)      Enforcing the Confidentiality Agreement and other non-disclosure policies to which employees and former employees are subject.

14.     Plaintiff/Relator was hired by ABC on October 29, 2007 as an Internal Auditor III.

15.     In accepting the terms of ABC's Offer Letter on October 22, 2007, Plaintiff/Relator acknowledged that he would be required to sign a Confidentiality Agreement and a Code of Ethics & Business Conduct acknowledgement form on his hire date. *See* Offer Letter, attached hereto as Ex. AA.

16.     As required by his Offer Letter, Plaintiff/Relator executed a written Confidentiality Agreement with ABC on October 29, 2007.  The Confidentiality Agreement states in relevant part:

> Covenant Not to Disclose Confidential Information.  While employed by the Company and thereafter, Employee shall hold in strictest confidence and shall not, directly or indirectly, orally or in writing, disclose to any person or entity, or use for the benefit of himself/herself or others, any Confidential Information, except in connection with and for the benefit of Company's business and in strict compliance with Company rules, policies and directives.

> Definition of Confidential Information.  Confidential information includes, but is not limited to . . . the development, production, sale, distribution and marketing of any products developed, produced, sold, distributed or marketed by the Company . . . the company's methods, techniques and processes of conducting business . . . financial and accounting data, customer lists and information.

> Confidentiality Agreement, attached hereto as Ex. BB, § 3, 4.1.

17.     Section 6.4 of the Confidentiality Agreement expressly provides that the employee "acknowledges that Confidential Information and Company Property . . . relates to any subsidiaries, related companies or divisions of the Company."  Thus, by signing the Confidentiality Agreement, Plaintiff/Relator confirmed his understanding that he was retained to

audit ABC as well as its subsidiaries, and that he would maintain the confidentiality of ABC and its subsidiaries' confidential information.  Ex. BB.

18. Additionally, the Confidentiality Agreement explicitly states that, "[i]n consideration for [Plaintiff/Relator's] agreement" to the Confidentiality Agreement, Counterclaimants would entrust him with confidential information "which Employer would not have disclosed [to employee] absent Employee's acceptance of this Agreement."  Ex. BB, § 1.2.

19. In regard to damages, the Confidentiality Agreement provides in relevant part:

> Employee's Acknowledgments and Agreements . . . the Company will suffer immediate and irreparable harm if Employee violates any of the terms, conditions or covenants of this Agreement.  In the event Employee violates or attempts or threatens to violate any of the terms, conditions or covenants of this Agreement, Employee hereby agrees and consents to . . . the entry of a temporary restraining order without notice or hearing, a preliminary injunction and a permanent injunction enjoining such violation, and the suspension or cancellation of any and all sums owing by the Company to Employee.

Ex. BB, § 2.2.

20. The Confidentiality Agreement also explicitly provides for the recovery of attorney's fees, as follows:

> Attorney's Fees.  Should the Company be required to enforce its rights under this Agreement through legal action, Employee agrees to be liable for all reasonable attorney's fees and costs incurred by the Company in relation to such legal action(s).

> Ex. BB. § 6.5.

21. On October 29, 2007, and as required by his Offer Letter, Plaintiff/Relator also executed a written Code of Ethics Acknowledgement Form stating that he received and understood ABC's Code of Ethics & Business Conduct ("Code of Ethics").  The Code states in relevant part:

> Confidential business information is a valuable corporate asset to the Company that, if inappropriately disclosed, could harm the Company, its associates, its customers and its stockholders . . . [E]mployees shall hold in strictest confidence

and shall not, directly or indirectly, in any manner, disclose to any person or entity . . . any information deemed confidential by the Company, except in connection and for the benefit of the Company's business and in strict compliance with Company rules, policies and directives . . . .No . . . employee shall use knowledge of the Company's dealings, learned through his/her association with the Company for personal gain or advantage, nor shall he/she disclose such information to enable others to profit from it.

Code of Ethics, attached hereto as Ex. CC; Code of Ethics Acknowledgment Form, attached hereto as Ex. DD.

22.     On January 29, 2010, Plaintiff/Relator executed a second written acknowledgement confirming that he had reviewed and would comply with ABC's Code of Ethics.  This was after he received a written warning for inappropriate use of company property in his attempt to access restricted websites whose access was blocked by ABC.  *See* Ex. EE attached hereto.

23.     On October 29, 2007, Plaintiff/Relator also executed a written Handbook Acknowledgement Form stating that he received and understood the policies in ABC's Handbook.  The Handbook states, among other things, that employees must "maintain confidentiality during or after an internal or external investigation" or "any situation where the associate was directed to maintain confidentiality."  Handbook, relevant portions of which are attached hereto as Ex. FF, Handbook Acknowledgment Form attached hereto as Ex. GG.

24.     Plaintiff/Relator is also subject to the confidentiality provisions in ABC's Standard Operating Procedures (SOPs) for internal auditors, relevant portions of which are attached hereto as Exhibit HH.  The SOPs state in relevant part that:

a)

b)

47

c)

Ex. HH, § D-15.

25.     As a CPA, Plaintiff/Relator is also subject to the professional standards

established by the American Institute of CPAs ("AICPA").  Those standards provide, among

other things, that:

a)     "A member in public practice shall not disclose any confidential client
information without the specific consent of the client."  CODE OF
PROFESSIONAL CONDUCT Rule 301 (Am. Inst. of Certified Pub.
Accountants 2002).

b)     "Members of [a state CPA society or Board of Accountancy] shall not use
to their own advantage or disclose any member's confidential client
information that comes to their attention in carrying out those activities."
CODE OF PROFESSIONAL CONDUCT Rule 301 (Am. Inst. of Certified Pub.
Accountants 2002).

c)     "The disclosure of possible fraud to parties other than the client's senior
management and those charged with governance ordinarily is not part of
the auditor's responsibility and ordinarily would be precluded by the
auditor's legal or ethical obligations of confidentiality unless the matter is
reflected in the auditor's report."  Statement on Auditing Standards No.
99, AU § 316.82 (Am. Inst. of Certified Pub. Accountants 2002).

26.     On December 19, 2011, Plaintiff/Relator filed a Qui Tam Complaint ("Original

Complaint") against Counterclaimants.

27.     In preparing his Original Complaint, upon information and belief, in direct

contravention of the obligations and duties he owed Counterclaimants as an employee, auditor

and CPA, Plaintiff/Relator disclosed highly confidential and proprietary information related to

Counterclaimants' business to his attorneys and others.

48

28.     On March 15, 2012, Plaintiff/Relator filed a First Amended Qui Tam Complaint ("Complaint").  After the United States declined to intervene and thus refused to join in Plaintiff/Relator's lawsuit, the Complaint was unsealed and made part of the public record on October 26, 2012.

29.     In preparing his Complaint, in direct contravention of the obligations and duties he owed Counterclaimants as an employee, auditor, and CPA, Plaintiff/Relator disclosed highly confidential and proprietary information related to Counterclaimants' business to his attorneys and, upon information and belief, others.

30.     In filing his Complaint, in direct contravention of the obligations and duties he owed the Counterclaimants as an employee, auditor, and CPA, Plaintiff/Relator attached and, upon the complaint's unsealing, permitted to be placed in the public record confidential and proprietary information of the Counterclaimants, including (1) Prime Vendor Agreements and Customer Contracts, (2) documents containing pricing, credit transactions, and sales analysis information, (3) customer lists and customer information, (4) audit reports; and 5) documents pertaining to Counterclaimants' standard operating procedures.

31.     Among the confidential and proprietary information that Plaintiff/Relator included in his First Amended Complaint and attached as exhibits to it was the following:

    a)      PVAs and other customer contracts: Complaint paragraphs 50 and 52 and footnotes 4 and 19; Plaintiff's Exhibits C-1, C-2, G, and H-10;

    b)      Documents containing pricing, credit transactions, and sales analysis: Plaintiff's Exhibits E-1 through E-4, F, H-1 through H-5, I, J, K, M, and O;

    c)      Customer lists and information: Complaint paragraphs 70(a)-(e), 78-84, 87, 104-06, and corresponding footnotes; Plaintiff's Exhibits D, F, and H-6 through H-7;

    d)      Audit reports and standard operating procedures: Plaintiff's Exhibits U and V.

32.     This material was only removed from the public record after it was brought to the attention of Plaintiff/Relator's counsel by Counterclaimants and only after Counterclaimants filed two motions with the Court seeking removal of the confidential and proprietary information from the public record.

33.     Nonetheless, Plaintiff/Relator continues to rely on this information in an effort to support his claims.

34.     Upon information and belief, Plaintiff/Relator may have disclosed to his attorneys and others information subject to the Counterclaimants' attorney-client privilege and attorney work product protections.

35.     Plaintiff/Relator breached his duties to Counterclaimants by his unauthorized disclosure and use of Counterclaimants' confidential, privileged and proprietary information.

36.     Counterclaimants have a legitimate interest in enforcing Plaintiff/Relator's Confidentiality Agreement, Offer Letter, Code of Ethics Acknowledgement Form, and other confidentiality obligations, and protecting their confidential, proprietary, privileged and commercially valuable information.

37.     Counterclaimants, absent the relief sought herein, will be unable to protect themselves against the unauthorized disclosure and use of their confidential, privileged and proprietary information, and they stand to suffer, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.

## FIRST COUNTERCLAIM
### (Breach of Contract)

38.     Counterclaimants incorporate by reference their allegations set forth in paragraphs 1 through 37 as if fully restated herein.

39.     Plaintiff/Relator was, and continues to be contractually bound by:  1) the Confidentiality Agreement, 2) Plaintiff/Relator's Offer Letter stating his requirements to sign the Confidentiality Agreement and Code of Ethics Acknowledgment Form, and 3) Plaintiff/Relator's Acknowledgement Form that he will comply with the requirements of the Code of Ethics, which includes a confidentiality provision.

40.     ABC has honored its obligations under the Confidentiality Agreement, Offer Letter, and Plaintiff/Relator's Code of Ethics Acknowledgement Form.

41.     As subsidiaries of ABC, ABDC and BD are third party beneficiaries of ABC's confidentiality agreements with Plaintiff/Relator.

42.     In reliance on Plaintiff/Relator's promises to perform the contracts referenced in paragraph 36 above, and to maintain the confidentiality of the Counterclaimants' confidential information, Counterclaimants entrusted Plaintiff/Relator with confidential, proprietary and privileged information for purposes of carrying out audit work.

43.     Plaintiff/Relator has breached his contracts by disclosing Counterclaimants' confidential and proprietary information.

44.     Plaintiff/Relator's current and likely future misuse of such information has breached, and absent an injunction will continue to breach, his obligations under the Confidentiality Agreement, Offer Letter, and Code of Ethics Acknowledgment Form.

45.     As a result of these breaches, Counterclaimants have suffered damages and have been, and will continue to be, substantially and irreparably damaged.

## SECOND COUNTERCLAIM
### (Breach of Fiduciary Duty)

46.     Counterclaimants incorporate by reference their allegations set forth in paragraphs 1 through 45 as if fully restated herein.

47.     During his employment with Counterclaimants, Plaintiff/Relator, a CPA, was employed as an Internal Auditor III.  As an Internal Auditor III, Plaintiff/Relator occupied a position of trust and served as a fiduciary of Counterclaimants.

48.     By virtue of his position with Counterclaimants, his job responsibilities, and  the high degree of trust Counterclaimants reposed in him, Plaintiff/Relator owed Counterclaimants a duty of loyalty.

49.     Additionally, Plaintiff/Relator was bound by nondisclosure provisions in ABC's Handbook, Code of Ethics, and Standard Operating Procedures for internal auditors, all containing explicit confidentiality requirements.

50.     As a CPA and auditor, Plaintiff/Relator was also bound by the confidentiality obligations of his profession, including the provisions of the AICPA's Professional Code of Conduct and Auditing Standards.

51.     Plaintiff/Relator's disclosure of confidential, proprietary and privileged information violated nondisclosure requirements provided by ABC's Code of Ethics, Handbook, and its SOPs, and as required by the standards of his profession, including the AICPA.

52.     By intentionally engaging in such conduct during his employment with Counterclaimants, Plaintiff/Relator breached his duty of loyalty to Counterclaimants.

53.     As a result of this breach, Counterclaimants have suffered damages and have been, and will continue to be, substantially and irreparably damaged.

### THIRD COUNTERCLAIM
### (Implied Contract)

54.     Counterclaimants incorporate by reference their allegations set forth in paragraphs 1 through 53 as if fully restated herein.

55.     Plaintiff/Relator's confidential relationship with his employer creates an implied contract that imposes upon him the duty not to disclose the confidential information of his employer.

56.     Based on Plaintiff/Relator's confidential relationship with Counterclaimants as their auditor, and his express assurances that he would maintain the confidentiality of Counterclaimants' sensitive documents and information, as well as the confidentiality obligations imposed on Plaintiff/Relator by ABC's SOPs and the AICPA, an implied contract exists and has existed between Plaintiff/Relator and Counterclaimants that obligates Plaintiff/Relator not to disclose the confidential information of Counterclaimants.

57.     In breach of his implied contract with Counterclaimants, Plaintiff/Relator has disclosed Counterclaimants' confidential, proprietary and privileged information.

58.     As a result of this breach, Counterclaimants have suffered damages and have been, and will continue to be, substantially and irreparably damaged.

## FOURTH COUNTERCLAIM
### (Promissory Estoppel)

59.     Counterclaimants incorporate by reference their allegations set forth in paragraphs 1 through 58 as if fully restated herein.

60.     Plaintiff/Relator represented to Counterclaimants that he would not disclose Counterclaimants' confidential information, including but not limited to in his Confidentiality Agreement with Counterclaimants, and in the Acknowledgement Forms he executed pertaining to the confidentiality requirements in ABC's Handbook and Code of Ethics.

61.     In justifiable and detrimental reliance on Plaintiff/Relator's representations, Counterclaimants hired Plaintiff/Relator as an Internal Auditor III and entrusted him with their most confidential, proprietary and privileged information.

62.     Counterclaimants have been harmed by their detrimental reliance on Plaintiff/Relator's representations, in that Plaintiff/Relator has disclosed the confidential, proprietary and privileged information with which they entrusted him in reliance on his promises, which has caused and will continue to cause Counterclaimants to suffer damages.

63.     Injustice can be avoided only by enforcing Plaintiff/Relator's promises not to disclose Counterclaimants' confidential, proprietary and privileged information.

64.     Upon information and belief, even assuming that Plaintiff/Relator has asserted any cognizable claim against the Counterclaimants in his Complaint, which Counterclaimants deny as set forth in their Answer and Affirmative Defenses above, Plaintiff/Relator cannot establish any such claim without improperly relying upon and/or disclosing Counterclaimants' confidential, proprietary and privileged information.

## PRAYER FOR RELIEF

WHEREFORE, as to all Counterclaims, Counterclaimants pray as follows:

1.     That Plaintiff/Relator takes nothing by reason of the Complaint and that Plaintiff/Relator's claims against Counterclaimants be dismissed with prejudice;

2.     That Counterclaimants be awarded preliminary and permanent injunctions restraining and enjoining Plaintiff/Relator from:

    a)     Directly or indirectly relying upon, using or communicating confidential, proprietary or privileged information of Counterclaimants; and

    b)     Engaging in any other activity that violates his contractual obligations and fiduciary and other duties to Counterclaimants to preserve Counterclaimants' confidential, proprietary and privileged information.

3.     That Counterclaimants be awarded preliminary and permanent injunctions ordering Plaintiff/Relator to return to Counterclaimants any all of Counterclaimants' property,

including but not limited to Counterclaimants' confidential, proprietary and privileged information;

       4.      That Counterclaimants be awarded money damages and costs to compensate for injuries caused by Plaintiff/Relator's wrongful acts described herein;

       5.      That Counterclaimants be awarded punitive damages, attorneys' fees, and costs pursuant to applicable law;

       6.      For such other and further relief, legal or equitable, as the court deems just and proper.

## DEMAND FOR JURY TRIAL

       ABC, ABDC, and BD hereby demand a trial by jury on all issues so triable.

       Respectfully submitted,

Dated: January 7, 2013           <u>s/Eric W. Sitarchuk</u>
                          Eric W. Sitarchuk (PA ID No. 39082)
                          Meredith Auten (PA ID No. 84607)
                          MORGAN, LEWIS & BOCKIUS LLP
                          1701 Market Street
                          Philadelphia, PA 19130
                          esitarchuk@morganlewis.com
                          mauten@morganlewis.com
                          (215) 963-5000

                          *Counsel for AmerisourceBergen Corporation,*
                          *AmerisourceBergen Drug Corporation and*
                          *Bellco Drug Co.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2013, a true and correct copy of the foregoing

Redacted Answer to First Amended Qui Tam Complaint With Affirmative Defenses and

Counterclaims was filed and served via electronic case filing (ECF) on all counsel of record who

have consented to electronic service and is available for viewing and downloading from the ECF

system.

Dated: January 7, 2013                              /s/Eric W. Sitarchuk
                                                    Eric W. Sitarchuk