IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATE OF CALIFORNIA, THE STATE OF DELAWARE, THE STATE OF FLORIDA, THE STATE OF GEORGIA, THE STATE OF HAWAII, THE STATE OF ILLINOIS, THE STATE OF INDIANA, THE STATE OF LOUISIANA, THE STATE OF MICHIGAN, THE STATE OF MONTANA, THE STATE OF NEVADA, THE STATE OF NEW JERSEY, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, THE STATE OF OKLAHOMA, THE STATE OF RHODE ISLAND, THE STATE OF TENNESSEE, THE STATE OF TEXAS, THE STATE OF WISCONSIN, THE COMMONWEALTH OF MASSACHUSETTS, THE COMMONWEALTH OF VIRGINIA, THE DISTRICT OF COLUMBIA, THE CITY OF CHICAGO and THE CITY OF NEW YORK ex rel. PATRICK WALSH, <br><br> Plaintiffs, <br><br> v. <br><br> AMERISOURCEBERGEN CORPORATION, et al., <br><br> Defendants. | Civil Action No. 11-cv-7584 (RBS) |

**DEFENDANTS' REDACTED FIRST AMENDED COUNTERCLAIMS**

Counterclaimants ABC, ABDC and BD (collectively "Counterclaimants"), by and through their undersigned attorneys, hereby assert amended counterclaims against Plaintiff/Relator Patrick Walsh ("Plaintiff/Relator") and state as follows:

## JURISDICTION

1.	Plaintiff/Relator has submitted to the personal jurisdiction of this Court by asserting claims against Counterclaimants.

2.	This Court has jurisdiction pursuant to 28 U.S.C. § 1367 because the claims asserted herein are so related to the federal claims asserted by Plaintiff/Relator against Counterclaimants that they form part of the same case or controversy under Article III of the United States Constitution.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

3.	ABC is a pharmaceutical services company that serves pharmaceutical manufacturers and healthcare providers, and provides drug distribution and related services. ABDC and BD are wholly owned subsidiaries of ABC. ABDC distributes prescription pharmaceuticals as well as a variety of other products to pharmacies and other businesses. BD also distributes pharmaceutical and other products to customers.

4.	Plaintiff/Relator is a Certified Public Accountant (CPA), and at all times relevant has worked for ABC as an Internal Auditor III. In this position, Plaintiff/Relator has had access to confidential, proprietary and privileged information belonging to the Counterclaimants.

### Counterclaimants' Confidential and Privileged Information

5.	The pharmacy sales industry in which Counterclaimants conduct their business is highly competitive. Consequently, it is important for Counterclaimants to protect their confidential and proprietary information in that it could be used by competitors to gain an improper advantage over Counterclaimants or otherwise harm Counterclaimants' business.

2

6. Among Counterclaimants' confidential documents are its customer contracts (typically called PVAs and Group Purchasing Organization Agreements) that include pricing and payment terms. Counterclaimants' customer contracts provide that the pricing and payment terms are confidential, and prohibit customers from disclosing such terms to third parties. Such information could be used by competitors to undercut Counterclaimant's pricing and payment terms, and otherwise to the competitive disadvantage of the Counterclaimants.

7. Other confidential and/or proprietary information Counterclaimants seek to protect includes, but is not limited to, documents containing or comprising pricing, credit transactions and sales analysis information, customer lists with customer information, financial information, audit reports, self-critical evaluations and assessments, and documents containing Counterclaimants' operating policies and procedures. Such information could be used by competitors and other third parties to identify and seek out Counterclaimants' customers, undercut pricing, payment and other terms of sale, anticipate and counter Counterclaimants' business strategies, seek to damage Counterclaimants' reputation, or otherwise act to the competitive disadvantage of the Counterclaimants.

8. Additionally, in the course of performing their audit functions, Counterclaimants' internal auditors are from time to time privy to information subject to the companies' attorney-client privilege or attorney work product protection through, for example, gathering information or conducting analyses in the course of counsel-directed reviews, or being privy to legal advice provided by company counsel with regard to matters subject to audit. Such information could be used by third parties against Counterclaimants in litigation or otherwise, thereby undercutting the fundamental purposes underlying these protections to, among other things, allow the full and free

exchange of information between client and counsel, and insure that clients receive fully informed and frank legal advice.

9. Counterclaimants do not share their confidential or proprietary documents with third parties unless required by Court order or subpoena and, even in those circumstances, confidential information is restricted and subject to confidentiality protection to the full extent permitted by law.

10. ABC has taken reasonable steps to protect its confidential, proprietary, sensitive, privileged and/or commercially valuable information. These efforts include, without limitation:

    a) Entering into a written Confidentiality Agreement with employees such as Plaintiff/Relator, who have access to confidential and proprietary information of ABC and/or its subsidiaries;

    b) Requiring all employees, including Plaintiff/Relator, to execute an acknowledgement form that they have received and reviewed Counterclaimants' Code of Ethics & Business Conduct containing a confidentiality provision;

    c) Providing all employees, including Plaintiff/Relator, with an Associate Handbook ("Handbook") that includes a specific provision requiring employees to maintain confidentiality during or after an internal or external investigation;

    d) Requiring all employees, including Plaintiff/Relator, to execute an acknowledgement form that they have reviewed Counterclaimants' policies and procedures in the Handbook;

    e) Enforcing the Confidentiality Agreement and other non-disclosure policies to which employees and former employees are subject.

### Role of Counterclaimants' Internal Auditors

11. Counterclaimants rely on their internal auditors to assist them in engaging in important self-critical analysis by, among other things, assisting in identifying errors, practices or procedures that may require correction or improvement, disclosing to the Counterclaimants fully and accurately any concerns they identify during the course of their audits, and cooperating with

the Counterclaimants in the implementation of any appropriate remedial measures; and to do so in a manner that accords with their auditors' obligations of confidentiality as auditing and accounting professionals, and company employees.

12. The Counterclaimants further rely on their internal auditors to conduct their audit work in a manner that maintains and does not jeopardize the confidentiality of the company information and materials reviewed during those audits.

13. The Counterclaimants further rely on their internal auditors to conduct their audit work on behalf of company legal counsel, and to communicate with company legal counsel, in a manner that maintains and does not jeopardize the companies' attorney-client privilege or the companies' and their counsel's attorney work product protection.

14. The Counterclaimants further rely on their internal auditors to use information obtained by them during the course of their audits only in the interests of the Counterclaimants and strictly to maintain the confidentiality of the companies' confidential, proprietary and privileged information.

**Obligations of Confidentiality Owed by Plaintiff/Relator to Counterclaimants**

15. Plaintiff/Relator was hired by ABC on October 29, 2007 as an Internal Auditor III.

16. In accepting the terms of ABC's Offer Letter on October 22, 2007, Plaintiff/Relator acknowledged that he would be required to sign a Confidentiality Agreement and a Code of Ethics & Business Conduct acknowledgement form on his hire date. *See* Offer Letter, attached hereto as Ex. AA.

17. As required by his Offer Letter, Plaintiff/Relator executed a written Confidentiality Agreement with ABC on October 29, 2007. The Confidentiality Agreement states in relevant part:

> Covenant Not to Disclose Confidential Information. While employed by the Company and thereafter, Employee shall hold in strictest confidence and shall not,

> directly or indirectly, orally or in writing, disclose to any person or entity, or use for the benefit of himself/herself or others, any Confidential Information, except in connection with and for the benefit of Company's business and in strict compliance with Company rules, policies and directives.
>
> <u>Definition of Confidential Information</u>.  Confidential information includes, but is not limited to . . . the development, production, sale, distribution and marketing of any products developed, produced, sold, distributed or marketed by the Company . . . the company's methods, techniques and processes of conducting business . . . financial and accounting data, customer lists and information.

Confidentiality Agreement, attached hereto as Ex. BB, § 3, 4.1.

      18.    Section 6.4 of the Confidentiality Agreement expressly provides that the employee "acknowledges that Confidential Information and Company Property . . . relates to any subsidiaries, related companies or divisions of the Company."  Thus, by signing the Confidentiality Agreement, Plaintiff/Relator confirmed his understanding that he was retained to audit ABC as well as its subsidiaries, and that he would maintain the confidentiality of ABC and its subsidiaries' confidential information.  Ex. BB.

      19.    Additionally, the Confidentiality Agreement explicitly states that, "[i]n consideration for [Plaintiff/Relator's] agreement" to the Confidentiality Agreement, Counterclaimants would entrust him with confidential information "which Employer would not have disclosed [to employee] absent Employee's acceptance of this Agreement." Ex. BB, § 1.2.

      20.    In regard to damages, the Confidentiality Agreement provides in relevant part:

> <u>Employee's Acknowledgments and Agreements</u> . . . the Company will suffer immediate and irreparable harm if Employee violates any of the terms, conditions or covenants of this Agreement.  In the event Employee violates or attempts or threatens to violate any of the terms, conditions or covenants of this Agreement, Employee hereby agrees and consents to . . . the entry of a temporary restraining order without notice or hearing, a preliminary injunction and a permanent injunction enjoining such violation, and the suspension or cancellation of any and all sums owing by the Company to Employee.

Ex. BB, § 2.2.

21.     The Confidentiality Agreement also explicitly provides for the recovery of attorney's fees, as follows:

> <u>Attorney's Fees</u>.  Should the Company be required to enforce its rights under this Agreement through legal action, Employee agrees to be liable for all reasonable attorney's fees and costs incurred by the Company in relation to such legal action(s).

Ex. BB. § 6.5.

22.     On October 29, 2007, and as required by his Offer Letter, Plaintiff/Relator also executed a written Code of Ethics Acknowledgement Form stating that he received and understood ABC's Code of Ethics & Business Conduct ("Code of Ethics").  The Code states in relevant part:

> Confidential business information is a valuable corporate asset to the Company that, if inappropriately disclosed, could harm the Company, its associates, its customers and its stockholders . . . [E]mployees shall hold in strictest confidence and shall not, directly or indirectly, in any manner, disclose to any person or entity . . . any information deemed confidential by the Company, except in connection and for the benefit of the Company's business and in strict compliance with Company rules, policies and directives . . . .No . . . employee shall use knowledge of the Company's dealings, learned through his/her association with the Company for personal gain or advantage, nor shall he/she disclose such information to enable others to profit from it.

Code of Ethics, attached hereto as Ex. CC; Code of Ethics Acknowledgment Form, attached hereto as Ex. DD.

23.     On January 29, 2010, Plaintiff/Relator executed a second written acknowledgement confirming that he had reviewed and would comply with ABC's Code of Ethics.  This was after he received a written warning for inappropriate use of company property in his attempt to enter restricted websites whose access was blocked by ABC.  *See* Ex. EE attached hereto.

24.     On October 29, 2007, Plaintiff/Relator also executed a written Handbook Acknowledgement Form stating that he received and understood the policies in ABC's Handbook.  The Handbook states, among other things, that employees must "maintain confidentiality during

7

or after an internal or external investigation" or "any situation where the associate was directed to maintain confidentiality." Handbook (relevant portions of which are attached hereto as Ex. FF); Handbook Acknowledgment Form attached hereto as Ex. GG.

25. Plaintiff/Relator is also subject to the confidentiality provisions in ABC's Standard Operating Procedures (SOPs) for internal auditors, relevant portions of which are attached hereto as Exhibit HH. The SOPs state in relevant part that:

a) 

b)

c)

26. As a CPA, Plaintiff/Relator is also subject to the professional standards established by the American Institute of CPAs ("AICPA"). Those standards provide, among other things, that:

    a)      "A member in public practice shall not disclose any confidential client information without the specific consent of the client." CODE OF PROFESSIONAL CONDUCT Rule 301 (Am. Inst. of Certified Pub. Accountants 2002).

    b)      "Members of [a state CPA society or Board of Accountancy] shall not use to their own advantage or disclose any member's confidential client information that comes to their attention in carrying out those activities." CODE OF PROFESSIONAL CONDUCT Rule 301 (Am. Inst. of Certified Pub. Accountants 2002).

      c)    "The disclosure of possible fraud to parties other than the client's senior management and those charged with governance ordinarily is not part of the auditor's responsibility and ordinarily would be precluded by the auditor's legal or ethical obligations of confidentiality unless the matter is reflected in the auditor's report."  Statement on Auditing Standards No. 99, AU § 316.82 (Am. Inst. of Certified Pub. Accountants 2002).

### **Plaintiff/Relator's Disclosure of Counterclaimants' Confidential Information**

27.    From in or around at least 2011 to in or around at least 2012, without permission or authorization, Plaintiff/Relator took and removed from Counterclaimants' premises and possession a large variety of Counterclaimants' confidential, proprietary and privileged information, and did so for purposes not in connection with or for the benefit of Counterclaimants' business.

28.    This included, among other things, information subject to Counterclaimants' attorney-client privilege and attorney work product doctrine, Prime Vendor Agreements and customer contracts, documents containing pricing, credit transactions and sales analysis information, customer lists and customer information, audit reports, and documents pertaining to Counterclaimants' standard operating procedures.

29.    On December 19, 2011, Plaintiff/Relator filed a Qui Tam Complaint ("Original Complaint") against Counterclaimants.

30.    In preparing his Original Complaint, in direct contravention of the obligations and duties he owed Counterclaimants as an auditor, CPA and employee, Plaintiff/Relator disclosed Counterclaimants' highly confidential, proprietary and privileged information to his personal attorneys and, upon information and belief, others.

31.    On March 15, 2012, Plaintiff/Relator filed a First Amended Qui Tam Complaint ("Amended Complaint").

32. In preparing his Amended Complaint, in direct contravention of the obligations and duties he owed Counterclaimants as an auditor, CPA and employee, Plaintiff/Relator disclosed Counterclaimants' highly confidential, proprietary and privileged information to his personal attorneys and, upon information and belief, others.

33. The United States investigated Plaintiff/Relator's allegations and, after its investigation was complete, filed on October 22, 2012, a notice declining to intervene in Plaintiff/Relator's lawsuit. The United States thus refused to join in Plaintiff/Relator's lawsuit. As a result, the Amended Complaint was unsealed and made part of the public record on October 26, 2012.

34. In filing his Amended Complaint, in direct contravention of the obligations and duties he owed the Counterclaimants as an employee, auditor, and CPA, Plaintiff/Relator attached and, upon the complaint's unsealing, permitted to be placed in the public record confidential and proprietary information of the Counterclaimants, including (1) Prime Vendor Agreements and Customer Contracts, (2) documents containing pricing, credit transactions, and sales analysis information, (3) customer lists and customer information, (4) audit reports; and 5) documents pertaining to Counterclaimants' standard operating procedures.

35. Among the confidential and proprietary information that Plaintiff/Relator included in his Amended Complaint and attached as exhibits to it was the following:

   a) PVAs and other customer contracts: Amended Complaint paragraphs 50 and 52 and footnotes 4 and 19; Plaintiff's Exhibits C-1, C-2, G, and H-10;

   b) Documents containing pricing, credit transactions, and sales analysis: Plaintiff's Exhibits E-1 through E-4, F, H-1 through H-5, I, J, K, M, and O;

   c) Customer lists and information: Amended Complaint paragraphs 70(a)-(e), 78-84, 87, 104-06, and corresponding footnotes; Plaintiff's Exhibits D, F, and H-6 through H-7;

   d) Audit reports and standard operating procedures: Plaintiff's Exhibits U and V.

36. The PVAs and other customer contracts, pricing and payment terms, credit transactions, sales analyses, customer lists and information, audit reports, and standard operating procedures that Plaintiff/Relator referred to in and attached to his Amended Complaint fall within the definition of "Confidential Information" in the Confidentiality Agreement that Plaintiff/Relator signed. *See* Ex. BB, § 4.1. In addition, such information could be used by competitors and other third parties to identify and seek out Counterclaimants' customers, undercut pricing, payment and other terms of sale, anticipate and counter Counterclaimants' business strategies, seek to damage Counterclaimants' reputation, or otherwise act to the competitive disadvantage of the Counterclaimants.

37. This material was removed from the public record only after Counterclaimants brought it to the attention of Plaintiff/Relator's counsel, and only after Counterclaimants filed two motions with the Court to remove the confidential and proprietary information from the public record.

38. Nonetheless, Plaintiff/Relator continues to rely on this information in an effort to support his claims.

39. Indeed, even after filing his Original Complaint, Plaintiff/Relator, without permission or authorization, continued to use his sensitive position as an auditor to seek out, obtain and use additional confidential, proprietary and/or privileged information of the Counterclaimants for purposes not in connection with or for the benefit of Counterclaimants' business.

40. Plaintiff/Relator's Original Complaint, which he filed on December 19, 2011, did not name BD as a defendant or make claims or allegations against it.

41. In January and February 2012, while Plaintiff/Relator continued in ABC's employ and while he remained subject to his confidentiality obligations, Plaintiff/Relator conducted an

internal audit of Bellco Generics' internal controls, including the handling of customer credits related to promotional sales. During that audit, Plaintiff/Relator obtained confidential and proprietary information related to Bellco Generics' business.

42. On March 15, 2012, while he was still in the process of conducting the internal audit of Bellco Generics, and before the related audit report was complete, Plaintiff/Relator amended his Original Complaint to add BD as a defendant and to make claims against it based on the confidential information he had obtained in the course of that audit. Plaintiff/Relator used and disclosed confidential and proprietary information related to Bellco Generics' business in making his allegations against BD in the Amended Complaint.

43. The confidential and proprietary information that Plaintiff/Relator obtained from the internal audit of Bellco Generics and used in his Amended Complaint includes confidential customer information and details of invoicing, pricing, and credit transactions involving particular customers that Plaintiff/Relator examined in the course of the internal audit. *See* Amended Complaint ¶¶104-106 and Exhibits M-1 through M-3 and O.

44. The information that Plaintiff/Relator used and disclosed about Bellco Generics, including information about its invoicing and pricing of the products it sells and its credit transactions, falls within the definition of "Confidential Information" in the Confidentiality Agreement that Plaintiff/Relator signed. *See* Exhibit BB, § 4.1.

45. In addition, such information could be used by competitors and other third parties to identify and seek out Counterclaimants' customers, undercut pricing, payment and other terms of sale, anticipate and counter Counterclaimants' business strategies, seek to damage Counterclaimants' reputation, or otherwise act to the competitive disadvantage of the Counterclaimants.

46. Plaintiff/Relator, by disclosing and using confidential and proprietary information that he obtained in the course of the Bellco Generics internal audit, violated his obligations to Counterclaimants under Counterclaimants' SOPs for internal auditors. *See* Ex. HH, § A-4-3.

47. After the unsealing of the Amended Complaint made public the confidential information related to Bellco Generics' business that Plaintiff/Relator had obtained in the course of the internal audit, Counterclaimants sought and obtained a court Order requiring such information to be sealed. *See* Doc. 27.

48. Plaintiff/Relator also disclosed to his personal attorneys information and documents that are subject to the Counterclaimants' attorney-client privilege and attorney work product protections, and that he is under an obligation to maintain in confidence and not disclose.

49. Plaintiff/Relator provided to his personal counsel an internal memorandum dated May 3, 2012 between Counterclaimants' in-house counsel regarding legal issues involving certain customer contracts, and which bears the clear and explicit admonition "Attorney-Client Communication Privileged and Confidential" in bold font at the top and bottom of the document.

50. Plaintiff/Relator further provided to his personal counsel an internal email dated October 17, 2012 addressed to in-house counsel and seeking legal advice from in-house counsel. .

51. Plaintiff/Relator breached his duties to Counterclaimants by his unauthorized disclosure and/or use of Counterclaimants' confidential, privileged and proprietary information for purposes not in connection with or for the benefit of Counterclaimants' business.

52. Counterclaimants have a legitimate interest in enforcing Plaintiff/Relator's Confidentiality Agreement, Offer Letter, Code of Ethics Acknowledgement Form, and other confidentiality obligations, and protecting their confidential, proprietary, privileged and commercially valuable information.

53. Counterclaimants, absent the relief sought herein, will be unable to protect themselves against the unauthorized disclosure and use of their confidential, privileged and proprietary information, and they stand to suffer, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.

54. Counterclaimants have incurred attorneys' fees and costs to protect their confidential, privileged and proprietary information from further disclosure. Among other things, they have sought and obtained a court Order requiring such information to be sealed; sought assurances from Plaintiff/Relator's attorneys regarding Plaintiff/Relator's disclosure of privileged information; and sought to enforce their rights under the Confidentiality Agreement. Counterclaimants also will likely incur attorneys' fees and costs and other expenses, including but not limited to, for computer forensics activities and electronic data review, to determine whether Plaintiff/Relator has disclosed other confidential, proprietary and/or privileged information of Counterclaimants and to prevent further such disclosures.

55. Plaintiff/Relator continues to be employed by Counterclaimants and receive compensation. Plaintiff/Relator has forfeited his right to the compensation he has received from and after the time he disclosed Counterclaimants' confidential, proprietary, and/or privileged information in violation of his obligations.

**FIRST COUNTERCLAIM**
**(Breach of Contract)**

56. Counterclaimants incorporate by reference their allegations set forth in paragraphs 1 through 55 as if fully restated herein.

57. Plaintiff/Relator was, and continues to be contractually bound by: 1) the Confidentiality Agreement, 2) Plaintiff/Relator's Offer Letter stating his requirements to sign the

Confidentiality Agreement and Code of Ethics Acknowledgment Form, and 3) Plaintiff/Relator's Acknowledgement Form that he will comply with the requirements of the Code of Ethics, which includes a confidentiality provision.

58.  ABC has honored its obligations under the Confidentiality Agreement, Offer Letter, and Plaintiff/Relator's Code of Ethics Acknowledgement Form.

59.  As subsidiaries of ABC, ABDC and BD are third party beneficiaries of ABC's confidentiality agreements with Plaintiff/Relator.

60.  In reliance on Plaintiff/Relator's promises to perform the contracts referenced in paragraph 52 above, and to maintain the confidentiality of the Counterclaimants' confidential information, Counterclaimants entrusted Plaintiff/Relator with confidential, proprietary and privileged information for purposes of carrying out audit work.

61.  Plaintiff/Relator has breached his contracts by disclosing Counterclaimants' confidential and proprietary information.

62.  Plaintiff/Relator's current and likely future misuse of such information has breached, and absent an injunction will continue to breach, his obligations under the Confidentiality Agreement, Offer Letter, and Code of Ethics Acknowledgment Form.

63.  As a result of these breaches, Counterclaimants have suffered damages and have been, and will continue to be, substantially and irreparably damaged.

## SECOND COUNTERCLAIM
### (Breach of Fiduciary Duty)

64.  Counterclaimants incorporate by reference their allegations set forth in paragraphs 1 through 63 as if fully restated herein.

65. During his employment with Counterclaimants, Plaintiff/Relator, a CPA, was employed as an Internal Auditor III. As an Internal Auditor III, Plaintiff/Relator occupied a position of trust and served as a fiduciary of Counterclaimants.

66. By virtue of his position with Counterclaimants, his job responsibilities, and the high degree of trust Counterclaimants reposed in him, Plaintiff/Relator owed Counterclaimants a duty of loyalty.

67. Additionally, Plaintiff/Relator was bound by nondisclosure provisions in ABC's Handbook, Code of Ethics, and Standard Operating Procedures for internal auditors, all containing explicit confidentiality requirements.

68. As a CPA and auditor, Plaintiff/Relator was also bound by the confidentiality obligations of his profession, including the provisions of the AICPA's Professional Code of Conduct and Auditing Standards.

69. Plaintiff/Relator's disclosure of confidential, proprietary and privileged information violated nondisclosure requirements provided by ABC's Code of Ethics, Handbook, and its SOPs, and as required by the standards of his profession, including the AICPA.

70. By intentionally engaging in such conduct during his employment with Counterclaimants, Plaintiff/Relator breached his duty of loyalty to Counterclaimants.

71. As a result of this breach, Counterclaimants have suffered damages and have been, and will continue to be, substantially and irreparably damaged.

**THIRD COUNTERCLAIM**
**(Implied Contract)**

72. Counterclaimants incorporate by reference their allegations set forth in paragraphs 1 through 71 as if fully restated herein.

73. Plaintiff/Relator's confidential relationship with his employer creates an implied contract that imposes upon him the duty not to disclose the confidential information of his employer.

74. Based on Plaintiff/Relator's confidential relationship with Counterclaimants as their auditor, and his express assurances that he would maintain the confidentiality of Counterclaimants' sensitive documents and information, as well as the confidentiality obligations imposed on Plaintiff/Relator by ABC's SOPs and the AICPA, an implied contract exists and has existed between Plaintiff/Relator and Counterclaimants that obligates Plaintiff/Relator not to disclose the confidential information of Counterclaimants.

75. In breach of his implied contract with Counterclaimants, Plaintiff/Relator has disclosed Counterclaimants' confidential, proprietary and privileged information.

76. As a result of this breach, Counterclaimants have suffered damages and have been, and will continue to be, substantially and irreparably damaged.

## FOURTH COUNTERCLAIM
### (Promissory Estoppel)

77. Counterclaimants incorporate by reference their allegations set forth in paragraphs 1 through 76 as if fully restated herein.

78. Plaintiff/Relator represented to Counterclaimants that he would not disclose Counterclaimants' confidential information, including but not limited to in his Confidentiality Agreement with Counterclaimants, and in the Acknowledgement Forms he executed pertaining to the confidentiality requirements in ABC's Handbook and Code of Ethics.

79. In justifiable and detrimental reliance on Plaintiff/Relator's representations, Counterclaimants hired Plaintiff/Relator as an Internal Auditor III and entrusted him with their most confidential, proprietary and privileged information.

80. Counterclaimants have been harmed by their detrimental reliance on Plaintiff/Relator's representations, in that Plaintiff/Relator has disclosed the confidential, proprietary and privileged information with which they entrusted him in reliance on his promises, which has caused and will continue to cause Counterclaimants to suffer damages.

81. Injustice can be avoided only by enforcing Plaintiff/Relator's promises not to disclose Counterclaimants' confidential, proprietary and privileged information.

82. Upon information and belief, even assuming that Plaintiff/Relator has asserted any cognizable claim against the Counterclaimants in his Amended Complaint, which Counterclaimants deny as set forth in their Answer and Affirmative Defenses above, Plaintiff/Relator cannot establish any such claim without improperly relying upon and/or disclosing Counterclaimants' confidential, proprietary and privileged information.

## **PRAYER FOR RELIEF**

WHEREFORE, as to all Counterclaims, Counterclaimants pray as follows:

1. Counterclaimants do not seek or request indemnity or contribution from Plaintiff/Relator for any portion of any recovery that Relator, the United States, any State or any other party may recover against any Counterclaimant/Defendant in this action;

2. That Plaintiff/Relator not be permitted to use confidential, proprietary or privileged information or documents, or evidence derived from the use of such material, to establish his claims against the Counterclaimants and, accordingly that Plaintiff/Relator's claims against Counterclaimants be dismissed with prejudice;

3. That Counterclaimants be awarded preliminary and permanent injunctions restraining and enjoining Plaintiff/Relator from:

    a) Directly or indirectly relying upon, using or communicating confidential, proprietary or privileged information of Counterclaimants; and

      b)     Engaging in any other activity that violates his contractual obligations and fiduciary and other duties to Counterclaimants to preserve Counterclaimants' confidential, proprietary and privileged information.

4.     That Counterclaimants be awarded preliminary and permanent injunctions ordering Plaintiff/Relator to return to Counterclaimants any and all of Counterclaimants' property, including but not limited to Counterclaimants' confidential, proprietary and privileged information;

5.     That Plaintiff/Relator forfeit, and Counterclaimants be awarded the return of, the amounts they have paid Plaintiff/Relator as employment compensation from and after the time he first disclosed Counterclaimants' confidential, proprietary, and/or privileged information;

6.     That Counterclaimants be awarded punitive damages, attorneys' fees, and costs pursuant to applicable law;

7.     That Counterclaimants be awarded money damages and costs to compensate for injuries caused by Plaintiff/Relator's wrongful acts described herein; and

8.     For such other and further relief, legal or equitable, as the court deems just and proper.

### DEMAND FOR JURY TRIAL

ABC, ABDC, and BD hereby demand a trial by jury on all issues so triable.

                                                    Respectfully submitted,

March 4, 2013                               /s/Eric W. Sitarchuk
                                                  Eric W. Sitarchuk (PA ID No. 39082)
                                                  Meredith S. Auten (PA ID No. 84607)
                                                  Dirkje Camille Frey (PA ID No. 306700)
                                                  Morgan, Lewis & Bockius, LLP
                                                  1701 Market Street
                                                  Philadelphia, PA 19103-2921
                                                  215-963-5000 – Telephone
                                                  215-963-5001 – Fax

                                                  *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2013, a true and correct copy of the foregoing Defendants' First Amended Counterclaims was filed and served via electronic case filing (ECF) on all counsel of record who have consented to electronic service and is available for viewing and downloading from the ECF system.  In addition, a true and correct copy of the foregoing was served on March 4, 2013, by first class mail, on the following counsel:

| | |
|---|---|
| Margaret L. Hutchinson<br>United States Attorney's Office<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA 19106-4476 | Marc Orlow<br>Begelman, Orlow & Melletz<br>411 Route 70 East, Suite 245<br>Cherry Hill, NJ 08034 |
| Susan Dein Bricklin<br>United States Attorney's Office<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA 19106-4476 | Ross Begelman<br>Begelman, Orlow & Melletz<br>411 Route 70 East, Suite 245<br>Cherry Hill, NJ 08034 |
| Colin M. Cherico<br>United States Attorney's Office<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA 19106-4476 | Regina D. Poserina<br>Begelman, Orlow & Melletz<br>101 West Elm Street, Suite 320<br>Conshohocken, Pa 19428 |

Dated: March 4, 2013          /s/Eric W. Sitarchuk
                              Eric W. Sitarchuk