IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALSH ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-7584 |
| AMERISOURCE BERGEN CORP. | : | |
| ET AL. | : | |

**SURRICK, J.**                                                                                      **JUNE  16  , 2014**

**MEMORANDUM**

Presently before the Court is Relator Patrick Walsh's Motion to Dismiss Defendants'

Amended Counterclaim for Failure to State a Claim (ECF No. 47).  For the following reasons,

the Motion will be denied.

**I.      BACKGROUND**

Relator Patrick Walsh is an experienced auditor who at all relevant times has worked for

Defendant Amerisource Bergen Corporation ("ABC") as a senior internal auditor.  (Am.

Countercl. ¶ 8, ECF No. 44.)  ABC is a pharmaceutical services company that services

pharmaceutical manufacturers and healthcare providers and provides drug distribution and

related services.  (*Id*. at ¶ 3.)  Defendants Amerisource Bergen Drug Corporation and Belco Drug

Company are wholly owned subsidiaries of ABC.  (*Id*.)

On or about March 13, 2012, Relator filed an Amended Complaint on behalf of the

United States Government and various states, alleging that Defendants' violated the federal False

Claims Act ("FCA") as well as similar state FCAs.  (Am. Compl. ¶¶ 21-22, ECF No. 29.)  On

October 22, 2012, the Government declined to intervene.  (ECF No. 11.)  On March 4, 2013,

Defendants filed an Amended Counterclaim alleging breach of contract (Count I), breach of

fiduciary duty (Count II), implied contract (Count III), and promissory estoppel (Count IV).

(Am. Countercl.)  On March 14, 2013, Relator filed the instant Motion to Dismiss.  (Relator's

Mot., ECF No. 47.)  On April 1, 2013, Defendants filed a Response in opposition.  (Defs.' Resp.,

ECF No. 48.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading that states a claim for relief

must contain a short and plain statement of the claim showing that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides for the dismissal of a complaint, in

whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P.

12(b)(6).  A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that

show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d

Cir. 2009).  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. at 678.  "While legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations."  *Id*. at 679.  This "'does not impose a probability requirement at the pleading stage,'

but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will

reveal evidence of' the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d

Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part

analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the

claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210-11.  Next, courts

determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

"'plausible claim for relief.'"  *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).  Given the nature of

the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.'"  *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting

*Iqbal*, 556 U.S. at 679).

## III.    DISCUSSION

### A.      Parties' Contentions

Defendants' Amended Counterclaim is based upon the fact that Relator signed a

confidentiality agreement ("Agreement") as a condition of his employment with Defendants.

Defendants contend that Relator's actions in initiating this lawsuit violated that Agreement.

(Am. Countercl. ¶ 17.)  More specifically, Defendants contend that Relator "took and removed

from [Defendants'] premises and possession a large variety of [Defendants'] confidential,

proprietary and privileged information, and did so for purposes not in connection with or for the

benefit of [Defendants'] business."  (*Id*. at ¶ 27.)  These documents included communications

between Defendants and in-house counsel concerning legal issues involving certain customer

contracts which bore "the clear and explicit admonition Attorney-Client Communication

Privileged and Confidential."  (*Id*. at ¶ 49.)  Also included was an e-mail addressed to in-house

counsel seeking legal advice.  (*Id*. at ¶ 50.)  Defendants allege that Relator shared this

confidential information with his personal attorney and that some of this information became

public when the Complaint was unsealed.  (*Id*. at ¶¶ 32, 37.)

Relator does not contest the fact that he signed the Agreement.  Rather, he argues that the information that he disclosed was not confidential and that Defendants have failed to explain why it is entitled to protection.  (Relator's Mot. 5.)  Relator argues that the Amended Counterclaim should be dismissed because Defendants have failed to demonstrate how they were harmed by the disclosure of the information.  (*Id*. at 6-7.)  Relator also maintains that even if the information was confidential, Defendants' Amended Counterclaim should be dismissed because there is a strong public policy against counterclaims in qui tam actions.  (*Id*. at 7.)  Finally, Relator appears to argue that if the Amended Counterclaim is not dismissed, it should be stayed until after adjudication of the qui tam claims.  (*Id*. at 8-9.)

### B.        Confidential and Proprietary Information

"Under Pennsylvania law, the duty of an employee not to disclose the secrets of his employer may arise either from an express contract . . . or may be implied from the confidential relationship existing between the master and servant."  *Healthcare Affiliated Servs., Inc. v. Lippany*, 701 F. Supp. 1142, 1152 (W.D. Pa. 1988) (citing *MacBeth–Evans Glass Co. v. Schnelbach*, 86 A. 688, 691 (Pa. 1913)).[1]  Here, the Agreement defines as confidential any information relating to:

> [T]he development, production, sale, distribution and marketing of any products developed, produced, sold, distributed or marketed by the Company . . . and the Company's methods, techniques, and processes of conducting business . . . financial and accounting data, customer lists and information.

(Defs.' Resp. 4; Agreement ¶ 4.1.)  Since the Agreement explicitly describes the type of information that it seeks to maintain as confidential, we must determine whether the information

---

[1] The Agreement provides that "the laws of Pennsylvania will be applicable and controlling" in all matters pertaining to the underlying Agreement.  (Agreement ¶ 6.6, Am. Countercl. Ex. BB.)

disclosed by Relator falls within its scope.  *Youti v. Macy's Retail Holding, Inc.*, 626 F. Supp. 2d

511, 525 (E.D. Pa. 2009) ("As the agreement specifically defines what constitutes confidential

information, I will consider only whether the information satisfies the provision's definition.").[2]

Defendants allege that Relator attached to the Amended Complaint:  "(1) Prime Vendor

Agreements and Customer Contracts, (2) documents containing pricing, credit transactions, and

sales analysis information, (3) customer lists and customer information, (4) audit reports, and (5)

documents pertaining to [Defendants'] standard operating procedures."  (Am. Countercl. ¶ 34.)

This is the type of information that the Agreement defines as confidential.  Furthermore,

Pennsylvania courts, as well as federal courts applying Pennsylvania law, have held that such

information can be protected as trade secrets.  *See Bohler-Uddelholm Am., Inc. v. Ellwood Grp.,*

*Inc.*, 247 F.3d 79, 107 (3d Cir. 2001) (finding that under Pennsylvania law, information such as

client lists, customer profiles, pricing information, and shipping information

---

[2] Defendants argue that as a certified public accountant ("CPA"), Relator is "subject to
the professional standards and confidentiality requirements set forth by the American Institute of
CPAs, which he violated.  (Am. Countercl. ¶¶ 25-27.)  This argument is problematic for several
reasons.  First, it is unclear whether this Court has jurisdiction to enforce these rules.  *See Rubin
v. Katz*, 347 F. Supp. 322, 323 (E.D. Pa. 1972) (noting that unlike the jurisdiction to enforce
canons for attorneys, which "is based on the regulatory power of courts over members of the bar
. . . [t]here is no similar basis for the [c]ourt to enforce the Code of Ethics and Rules of Conduct
for accountants").  Second, federal common law does not recognize an accountant-client
privilege.  *Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3d Cir. 1982).
Although Pennsylvania has enacted legislation recognizing an accountant-client privilege, 63 Pa.
Cons. Stat. § 9.11(a), the parties have not addressed the issue of whether that statute applies to
the facts of this case.  *See United States v. Bowman*, 358 F.2d 421, 423 (3d Cir. 1966) ("Since
the statute is in derogation of the common law which does not accord an accountant-client
privilege the privilege which it accords must be strictly construed.").  Finally, even if
Pennsylvania law prohibits the disclosures made by Relator, there is "reason to question whether
the privilege created by state law is applicable to a suit based on federal [] law."  *Rubin*, 347 F.
Supp. at 324.  In any event, since the parties have not addressed these issues, and since
Defendants' Amended Counterclaim survives Relator's Motion to Dismiss on other grounds, we
will not address this argument.

can be a trade secret); *see also Robinson Elec. Supervisory Co. v. Johnson*, 154 A.2d 494, 496 (1959) ("Customer lists and customer information . . . [are] highly confidential and constitute a valuable asset.  Such data has been held to be property in the nature of a 'trade secret' for which an employer is entitled to protection . . . .").

The steps that an employer takes to maintain the confidentiality of its information are an important factor in determining whether that information is entitled to protection.  For example, confidential customer lists have been held to be trade secrets when "[t]he degree of secrecy [is] such that it would be difficult for others to obtain the information without using improper means." *Nat'l Risk Mgmt., Inc. v. Bramwell*, 819 F. Supp. 417, 431 (E.D. Pa. 1993).  In the instant case, Defendants contend that they utilize a number of measures to maintain confidentiality.  First, "they do not share their confidential or proprietary documents with third parties unless required to do so by [c]ourt order or subpoena and, even in those circumstances, confidential information is restricted and subject to confidentiality protection to the full extent permitted by law." (Am. Countercl. ¶ 9.)  Second, Defendants prohibit their customers from disclosing pricing and payment terms to third parties.  (*Id*. at ¶ 6.)  Third, Defendants enter into confidentiality agreements with employees who have access to confidential and proprietary information.  (*Id*. at ¶ 10(a).)

Defendants argue that Relator's actions in filing his Amended Complaint were in contravention of these measures and that their confidential information "was removed from the public record only after [Defendants'] filed two motions with the Court to remove the confidential and propriety information from the public record." (*Id*. at ¶ 37.)  Taking these assertions as true, the Amended Counterclaim sufficiently alleges that Relator disclosed Defendants' confidential and proprietary information.  We are not persuaded by Relator's

argument that Defendants are required to explain why such documents are confidential and proprietary.  *See Pennfield Precision, Inc. v. EF Precision, Inc.*, No. 00-280, 2000 WL 1201381, at *4 (E.D. Pa. Aug. 15, 2000) ("Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secret.") (citation omitted); *see also Protocomm Corp. v. Fluent, Inc.*, No. 93-0518, 1995 WL 3671, at *13 (E.D. Pa. Jan. 4, 1995) ("The question of whether proprietary information constitutes a trade secret is an issue of fact, ordinarily resolved by the fact finder after a full presentation of the evidence.") (citation omitted).

### C.     Damages

Despite Relator's assertions to the contrary, Defendants have sufficiently alleged that they suffered damages as a result of Relator's disclosures.  The Agreement states that "the Company will suffer immediate and irreparable harm if Employee violates any terms, conditions or covenants of this Agreement."  (Agreement ¶ 2.2.)  This is because, as Defendants explain, their confidential information can be used by competitors to "identify and seek out [Defendants'] customers, undercut pricing, payment and other terms of sale, anticipate and counter [Defendants'] business strategies, seek to damage [Defendants'] reputation, or otherwise act to the competitive disadvantage of [Defendants]."  (Am. Countercl. ¶ 7.)  In addition, if Defendants ultimately prevail on their Amended Counterclaim, they will be entitled to attorneys' fees and costs incurred in protecting their confidential information.  (Agreement ¶ 6.5); *see Allia v. Target Corp.*, No. 07-4130, 2010 WL 1050043, at *14 (D.N.J Mar. 17, 2010) (finding that employer was entitled to attorneys' fees for employee's breach of confidentiality agreement where there was a provision in the contract providing for such fees).  Finally, Defendants will, at a minimum,

be entitled to nominal damages if they prevail on their Amended Counterclaim.  *Nesselrotte v.*

*Allegheny Energy, Inc*., 615 F. Supp. 2d 397, 408 (E.D. Pa. 2009) (finding that even if the

defendant was unable to prove actual damages as a result of employee's breach of a

confidentiality agreement the employer would still be entitled to nominal damages).

### D.    Public Policy

Relator argues that the most compelling reason for dismissal is the strong public policy

against counterclaims in qui tam actions.  It is well settled that qui tam defendants cannot bring

counterclaims "for indemnification and contribution that are based on their liability under the

FCA or have the same effect as offsetting FCA liability."  *United States v. Campbell*, No. 08-

1951, 2011 WL 43013, at \*10 (D.N.J. Jan. 4, 2011); *United States ex rel. Miller v. Bill Harbert*

*Int'l Constr., Inc*., 505 F. Supp. 2d 20, 26 (D.D.C. 2007) (collecting cases).  Equally apparent

however is the fact that counterclaims "that are based on damages which are independent claims

may be permitted, so long as those claims do not 'have the effect of providing for

indemnification or contribution.'"  *Campbell*, 2011 WL 43013, at \*11 (quoting *Miller*, 505 F.

Supp. 2d at 27.  This is because, as the Ninth Circuit explained in *United States ex rel. Madden v.*

*Gen. Dynamics Corp*., "a qui tam defendant's counterclaims will often be compulsory under

Federal Rule of Civil Procedure 13."  4 F.3d 827, 831 (9th Cir. 1993).  Thus, a qui tam defendant

who does not raise a counterclaim might be permanently precluded from asserting that claim.  *Id*.

Such a result would be a violation of the defendant's procedural due process rights.  *Id*.

In *Miller*, the court set forth a clear and concise distillation of the cases dealing with

counterclaims in FCA actions:

These cases demonstrate that there are two ways in which an FCA defendant's counterclaim may seek independent damages and thus be permissible. The use of the word independent has led to some confusion, and courts would be better served to describe the permissible claims as not dependent on the fact of FCA liability.   In short form, claims by an FCA defendant have been properly permitted where the success of the FCA defendant's claim does not require a finding that the defendant is liable in the FCA case.

. . . .

These cases come together to form a sensible rule. If a defendant's counterclaim is predicated on its own liability, then its claims against a relator typically will allege that the relator participated in the fraud, or caused the defendant some damage by the act of being a relator, that is, by disclosing the defendant's fraud. The first kind of action seeks contribution or indemnity, rights that are not provided by the FCA because they would deter relators, allow wrongdoers to shift their costs, and would disrupt the intended framework of incentives and punishments established by the FCA. The second kind of action has the same effect of providing contribution or indemnity, with the perverse twist that the relator is not even accused of contributing to the defendant's fraud. If such suits were allowed, they would punish innocent relators, which would be a significant deterrent to whistleblowing and would imperil the government's ability to detect, punish, and deter fraud. The FCA contains several provisions seeking to protect relators from retaliation, and it would run counter to this policy if the Court were to allow retaliatory suits against truthful relators.

*Miller*, 505 F. Supp. 2d at 27-29.

Although the analysis set forth in *Miller* is a useful starting point, it does not address the more specific question of whether the enforcement of a confidentiality agreement runs contrary to the purpose of the FCA.  On that issue, courts have taken differing views.  For example, in *United States ex rel. Grandeau v. Cancer Treatment Centers of America*., the court dismissed the defendant's counterclaim for breach of a confidentiality agreement after concluding that the agreement could not "trump the FCA's strong policy of protecting whistleblowers who report fraud against the government."  350 F. Supp. 2d 765, 773 (N.D. Ill. 2004)[3]; *see also X Corp. v.*

---

[3] Defendants attempt to distinguish *Grandeau*, arguing that it "did not address disclosures other than in response to a government subpoena."  (Defs.' Resp. 14 n.2.)  However, the court

*Doe*, 805 F. Supp. 1298, 1310 n.24 (E.D. Va. 1992) ("To the extent it prevented disclosure of evidence of a fraud on the government, [the confidentiality agreement] would be void as contrary to public policy.  In other words, [the plaintiff] cannot rely on any contract to conceal illegal activity.").  Similarly, in *United States ex rel. Head v. Kane Co.*, the court dismissed a counterclaim in which it was alleged that the plaintiff breached a separation agreement by refusing to return a document to the defendant.  668 F. Supp. 2d 146, 151-52 (D.D.C. 2009).  The court held that "[e]nforcing a private agreement that requires a qui tam plaintiff to turn over his or her copy of a document, which is likely to be needed as evidence at trial, to the defendant who is under investigation would unduly frustrate the purpose of [the FCA]." *Id*. at 152.

On the other hand, in *United States ex rel. Mossey v. Pal-Tech*, *Inc*., 231 F. Supp. 2d 94 (D.D.C. 2002), a different court in the D.C. district reached a contrary conclusion.  In that case, the defendant counterclaimed for breach of contract resulting from the qui tam plaintiff's disclosure and retention of confidential information.  *Id*. at 99.  In denying the plaintiff's motion to dismiss, the court found that "the nature of the contract and the facts alleged" did not permit the court to say that the defendant "could not prove any set of facts that would entitle it to relief." *Id*.; *see also Zahodnick v. Int'l Bus. Machs. Corp*., 135 F.3d 911, 915 (4th Cir. 1997) (granting the defendant's motion for summary judgment on Plaintiff's retaliation claim under the FCA and finding that the plaintiff violated the terms of his nondisclosure agreements).[4]

---

clearly explained that it made no difference whether the defendant's counterclaim was based on the relator's response to the subpoena or in retaliation to the relator's independent initiation of the qui tam action.  *Grandeau*, 350 F. Supp. 2d at 773.  In either case, the "[r]elator could have disclosed the documents to the government under any circumstances, without breaching the confidentiality agreement." *Id*.

[4] We note that *Zahodnick* does not directly apply to the instant case.  In *Zahodnick*, the plaintiff filed a retaliation claim under the FCA in his individual capacity not as a relator on

Similarly, in *Battiata*, the defendants brought a counterclaim for breach of fiduciary duty, arguing that the plaintiff's "access to confidential information created a confidential relationship and imposed a fiduciary duty not to publish or disseminate information purported to be privileged or confidential."  906 F. Supp. 2d at 454 (citation omitted).  The defendants sought damages in the form of restitution and the imposition of a constructive trust over any revenues, earnings, profits, compensation, and benefits recovered by the plaintiff as a result of the qui tam action.  *Id.*  The court granted the plaintiff's motion to dismiss after concluding that these damages were predicated upon the defendants' liability under the FCA.  *Id.* at 461.  However, in dismissing the counterclaim without prejudice, the court recognized the possibility that it could be amended to request independent damages.  *Id.*; *see also United States ex rel. v. Agape Senior Cmty. Inc.*, No. 12-3466, 2013 WL 6383085, at *2 (D.S.C. Dec. 5, 2013) (refusing to grant a stay of proceedings where it was alleged that the qui tam plaintiff distributed the defendant's private information and noting that the availability of counterclaims in the lawsuit provided the defendants with adequate protection).

Other courts have focused on the reasonableness and scope of the plaintiff's disclosure in determining whether to permit counterclaims in FCA actions.  In *Cafasso ex rel. United States v. Gen. Dynamics C4 Systems., Inc.*, the Ninth Circuit affirmed the district court's dismissal of the plaintiff's qui tam complaint and granted the defendant summary judgment on its counterclaim for breach of a confidentiality agreement.  637 F.3d 1047, 1058, 1062 (9th Cir. 2011).  In so doing, the Court declined to recognize a public policy exception to the enforcement of confidentiality agreements in FCA actions.  *Id.* at 1062.  The Court recognized "some merit" in

---

behalf of the United States.  Therefore, allowing the counterclaim to proceed did not necessarily raise the same concerns as a counterclaim in a qui tam action.  *United States ex rel. Battiata v.*

such a policy; however, it noted that even if it had been adopted, "it would not cover [the plaintiff's] conduct given her vast and indiscriminate appropriation of [the defendant's] files." *Id*. The Court explained that, "those asserting [protection under the policy] would need to justify why removal of the documents was reasonably necessary to pursue an FCA claim" and that the plaintiff had failed to make "such [a] particularized showing." *Id*.[5]

Here, Relator argues that Defendants' Amended Counterclaim "is a thinly disguised claim for indemnification." (Relator's Mot. 7.) We disagree. The Amended Counterclaim does not allege that Relator participated in the purported fraud. Nor does it suggest that the injuries sustained by Defendants were a result of Relator's disclosure of the alleged fraud. Furthermore, unlike *Battiata,* Defendants' requested damages are not based upon any potential revenues, earnings, profits, compensation, or benefits awarded to Relator as a result of this qui tam action. Rather, the damages sought by Defendant are alleged to be the result of Relator's breach of a validly executed confidentiality agreement. As in *Caffasso*, it is possible to conceive of a case in which Defendants are found to be not liable under the FCA, while prevailing on their Amended Counterclaim for violation of the confidentiality agreement. Defendants' Amended

---

*Puchalski*, 906 F. Supp. 2d 451, 460-61 (D.S.C. 2012).

[5] *Compare Siebert v. Gene Sec. Network, Inc*., No. 11-1987, 2013 WL 5645309, at *8 (N.D. Cal. Oct. 16, 2013) (finding that although the confidentiality agreement was unenforceable as a matter of public policy, the counterclaim should not be dismissed in its entirety because it was possible that the plaintiff took confidential documents unrelated to his FCA claim), *and United States ex rel. Wildhirt v. AARS Forever, Inc*., No. 09-1215, 2013 WL 5304092, at *6 (N.D. Ill. Sept. 19, 2013) ("Drawing a reasonable inference in Defendants' favor, the court will assume at the Rule 12(b)(6) stage that Relators' retentions and disclosures went beyond the scope of those necessary to pursue their qui tam suit."), *with United States ex rel. Ruhe v. Masimo Corp*., 929 F. Supp. 2d 1033, 1039 (C.D. Cal. 2012) (denying the defendant's motion to strike where "[r]elators sought to expose a fraud against the government and limited their taking to documents relevant to the alleged fraud").

Counterclaim, which is not predicated upon a finding of liability under the FCA, is not a claim for indemnification.  We will not bar it on those grounds.

Moreover, because we agree with the Ninth Circuit's reasoning in *Cafasso*, it would be inappropriate to dismiss Defendants' Amended Counterclaim at this stage of the proceedings. The Amended Counterclaim alleges that Relator took "a large variety of [Defendants] confidential, proprietary and privileged information . . . ." (Am. Countercl. ¶ 27.)  While it is certainly possible that the entirety of this information is required to prove Relator's claim, it is simply too early to know for sure.  This is especially true given Relator's failure to make any kind of particularized showing.  For example, Relator's Motion fails to provide any justification in response to Defendants' allegation that he disclosed to his personal attorneys, information that was protected by the attorney-client privilege.  Accepting Defendants' allegations as true, as we must, we conclude that Defendant has pled sufficient facts to survive Plaintiff's Motion to Dismiss.

### E.      Wavier and Accord

Relator argues that Defendants have continued to employ Relator, despite their allegations of his improper actions, based upon an understanding and agreement with Relator's counsel.  (Relator's Mot. 12.)  Relator does not provide any legal authority in support of his argument that Defendants' actions should result in the dismissal of their Amended Counterclaim. Moreover, because Relator provides no further detail concerning the nature of this understanding and agreement, it is unclear what effect, if any, it has on Defendants' Amended Counterclaim. Relator's argument does not provide sufficient grounds upon which to dismiss Defendants' Amended Counterclaim.

### F.    Bifurcation

While conceding that some courts permit counterclaims for independent damages in FCA

cases, Relator argues that those courts suggest bifurcated trials.  (Relator's Mot. 8-9.)  Relator

draws this argument from the Ninth Circuit's dicta in *Madden*.  There, the Court addressed the

possibility that its holding would encourage qui tam defendants, who were barred from bringing

counterclaims for indemnification, to instead bring claims for independent damages.  *Madden*, 4

F.3d at 831.  The Ninth Circuit suggested that courts could prevent such manipulation by ruling

on the qui tam defendant's liability prior to addressing the qui tam defendant's counterclaims.

*Id*. (citing *Burch ex rel. United States v. Piqua Eng'g, Inc*., 145 F.R.D. 452, 457-58 (S.D. Ohio

1992)).  "If a qui tam defendant is found liable, the counterclaims can then be dismissed on the

ground that they will have the effect of providing for indemnification or contribution.  On the

other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the

merits."  *Id*.

We are not persuaded that bifurcation of Defendants' Amended Counterclaim is

appropriate at this early stage of the proceedings.  Under Federal Rule of Civil Procedure 42(b),

"a court may order a separate trial of any type of claim including a counterclaim 'in furtherance

of convenience,' 'to avoid prejudice,' or 'when separate trials will be conducive to expedition

and economy.'"  *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc*., No. 95-1231,

2007 WL 851823, at *1 (D.D.C. Mar. 14, 2007) (quoting Fed. R. Civ. P. 42(b)).  In *Miller*, the

court bifurcated the qui tam defendant's counterclaims after concluding that:  (1) not doing so

would have confused the jury in what was already a complex trial; (2) the resolution of the qui

tam complaint could be dispositive of the defendant's counterclaims; and (3) the relator and the

14

government would be prejudiced if the jury was permitted to hear the defendant's counterclaims at the same trial. *Id*. at \*2-3.

Unlike in *Miller*, the parties in the instant case are still in the early stages of litigation. We acknowledge the possibility "that discovery will reveal that all of the confidential documents, if there are any, [were] adequately related to [the relator's] FCA claims." *Siebert*, 2013 WL 5645309, at \*8. We further recognize that as this case proceeds to trial, it is "possible - perhaps even likely - that a stay or bifurcation of the counterclaims will be appropriate." *Id*. However, it is not only unnecessary, it would be imprudent to make this determination at this juncture, prior to the conclusion of discovery.

## IV.    CONCLUSION

For the foregoing reasons, Relator's Motion to Dismiss Defendants' Amended Counterclaim for Failure to State a Claim will be denied.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**